## J. W. GIBSON

### *v.*

### CHARLES W. BROWN *et al.*

*Opinion filed February 21, 1905.*

1. SPECIFIC PERFORMANCE—*when specific performance will not be refused for want of mutuality.* Specific performance of a contract for the sale of land may be decreed even though the vendors did not have a complete title when the contract was made, where they perfected their title to the satisfaction of the vendee before tendering performance, the time for which was not fixed by the contract. (*Gage* v. *Cummings,* 209 Ill. 120, distinguished.)

2. SAME—*technical and immaterial defects in title will not defeat specific performance.* Immaterial and technical defects of title will not be permitted to be set up to defeat specific performance where the purchaser gets substantially what he contracts for, and the right to take advantage of such defects is barred by *laches.*

3. SAME—*what not a violation of contract with respect to mortgage on land.* Authority to the vendors, in a contract of sale, to place a mortgage upon their farm for a certain amount for five years, at five per cent interest, covers a mortgage for the amount stated for five years at five per cent interest, *payable annually,* and containing the conditions usually found in farm mortgages respecting insurance, forfeiture, and payment of taxes and of solicitors' fees in case of foreclosure.

4. SAME—*what does not defeat specific performance.* Specific performance of a contract to convey land subject to a certain mortgage should not be defeated because certain other mortgages on the land had not been released of record, where the vendors, having arranged with the mortgagee to pay off the mortgages, procured releases thereof, which they tendered to the vendee with their deed.

5. SAME—*what does not entitle party to rescind contract.* Objection by the vendors, in a contract for the exchange of their farm

for a stock of goods, to carrying out the contract until they had had time to verify the footings of the invoice book, which they had sent a messenger for, will not be construed as such a refusal to perform the contract as authorizes the proposed vendee to rescind it *instanter.*

6. SAME—*a party cannot avail of his own wrong to defeat specific performance.* The right of the vendors to specific performance of a contract for the exchange of their farm for a stock of goods, if such right existed when performance was tendered by them, cannot be defeated by the subsequent act of the proposed vendee in selling some of the goods in stock and adding others.

7. SAME—*one who bases his refusal to perform on a certain ground waives others.* One who places his refusal to perform a contract for the exchange of property upon a certain specific ground is estopped, after litigation has begun, to set up other grounds for his refusal.

APPEAL from the City Court of Mattoon; the Hon. JAS. W. CRAIG, Judge, presiding.

This was a bill in chancery filed in the city court of the city of Mattoon by Charles W. and Phillip W. Brown, appellees, against J. W. Gibson, appellant, to enforce the specific performance of a contract in writing entered into between said parties on February 10, 1904, whereby the appellees agreed to exchange a farm of two hundred and forty acres, situated in Cumberland county, Illinois, the value of which was fixed by the contract at $22,000, with the appellant for a stock of hardware then in his possession in the city of Mattoon, which stock of hardware was to be invoiced and the appellant was to pay the appellees, in cash, the difference between the valuation fixed upon said farm and the invoice price of said stock of hardware, less $7500, which was to remain upon said farm in the form of a mortgage. At the time of the execution of the contract the appellant drew his check upon the First National Bank of Mattoon in favor of appellees for the sum of $2000, which represented a part of the cash to be paid for said farm, and the check and contract were placed in the hands of F. N. Henley, the attorney who drew the contract, to hold until the invoice of the stock of

hardware was completed. At the time the contract was executed the title to forty acres of said farm was in Walter S. Brown, a brother of appellees; and Catherine W. Brown, the mother of appellees, had a dower interest in said two hundred and forty acres as widow of David W. Brown, deceased, the father of appellees, of which the appellant was informed. On February 16, 1904, Walter S. Brown conveyed his interest in said forty acres, for the sum of $3000 in cash, to Charles W. and Phillip W. Brown. At the time the deed from Walter S. Brown was executed to the appellees the stock of hardware was being invoiced. The appellant was informed by appellees that they had obtained the deed to the forty acres of land from Walter S. Brown, and appellant expressed satisfaction therewith and the invoice was continued. On February 26, 1904, Catherine W. Brown released to Charles W. and Phillip W. Brown her dower interest in said two hundred and forty acres. The invoice of the stock of hardware was completed on the afternoon of the 26th of February, 1904, and the value thereof was ascertained to be the sum of $8549.77, which, together with the $7500 mortgage and the $2000 check, amounted to $18,049.77, and left a balance of $3950.23 to be paid in cash by the appellant to the appellees to equal the sum of $22,000, the amount fixed in the contract as the value of said farm.

On the morning of the 27th of February the appellant and his attorney met the appellees at the office of Henley, in Mattoon, for the purpose of closing the transaction. The attorney of the appellant said Mr. Gibson was ready to close and Mr. Henley said the appellees were ready; that they would want a little time to look over the footings of the invoice to see that they were correct, and asked the attorney for appellant to let him have the invoice book which he then had in his hand, for the purpose of going over the footings. The attorney of appellant replied that he could get his own book, and refused to allow him to see the book. Henley then telephoned the man who had represented appellees in taking

the invoice to come to his office and bring his invoice book, and he said to appellant and his attorney he would step down stairs into the bank and get the papers connected with the transaction, where they had been placed by him for safe keeping. While Henley was gone for the papers the appellant, through his attorney, offered appellees a roll of money and demanded a deed for the farm." The appellees replied Mr. Henley had gone for the deed and that they could not close until his return. Appellant's attorney said appellant had nothing to do with Henley but was dealing with them, and he and appellant left Henley's office. On the return of Henley a few minutes after appellant and his attorney had left his office, the footings of the invoice were gone over and found to be correct, and the appellees and their attorney then went to the office of the attorney of appellant, where they met appellant, and in the presence of his attorney offered to deliver to him their warranty deed conveying to him said two hundred and forty acre farm, and thereby to make him a clear title to said farm, subject to the mortgage for $7500 which they had placed thereon in accordance with the terms of said contract, and to otherwise comply with the terms of their contract with appellant, and demanded possession of the stock of hardware and the balance due them in cash, but appellant refused to accept the deed or to complete the transaction, placing his refusal upon the ground that the farm was encumbered by two unreleased mortgages other than the $7500 mortgage, which aggregated about $5600, and that he had already made an offer to perform the contract on his part and that appellees had failed and refused to perform on their part, and that by reason of such failure on the part of appellees he had rescinded the contract. The appellees then had with them, and offered to deliver to appellant, releases of the mortgages referred to by him other than the $7500 mortgage, and declared that said contract had not been rescinded and again tendered the deed to appellant. The appellant and his attorney refused to examine the deed, releases

and other papers which the appellees then had in their possession and offered to deliver to appellant, and again placed their refusal to perform the contract upon the grounds that the farm was encumbered otherwise than by the said $7500 mortgage and that the contract had been rescinded, whereupon the appellees filed this bill.

The appellant filed a cross-bill, and the appellees a supplemental bill. All of said bills were answered and replications were filed, and a trial was had before the court, which resulted in a decree in favor of the appellees for a specific performance of said contract, and the appellant has prosecuted an appeal to this court.

ANDREWS & VAUSE, and F. K. DUNN, for appellant.

EDWARD C. & JAMES W. CRAIG, Jr., and F. N. HENLEY, for appellees.

WRIGHT BROS., for First National Bank of Effingham.

Mr. JUSTICE HAND delivered the opinion of the court:

It is contended by appellant that the court erred in decreeing a specific performance of the contract entered into between the appellees and the appellant, as, it is said, at the time the contract was executed the appellees were not the owners of forty acres of said land. It appears that no specific time was fixed by the contract when the transaction was to be closed by the delivery of a deed of the farm to appellant and the delivery of the hardware stock to appellees and the payment to appellees of the difference in value between the value of the farm, as fixed by the contract, (less the $7500 mortgage and the $2000 check,) and the value of the hardware stock,—that is, time was not made the essence of the contract, and each party, after execution of the contract, had a reasonable time in which to comply with its provisions.

The general rule is, that a court of equity will not enforce the specific performance of a contract unless it is mu-

tual. When, therefore, by reason of personal incapacity, the nature of the contract, or for any other reason, the contract is incapable, at the time it is made, of being enforced against one party, that party is equally incapable of enforcing it against the other. (Fry on Specific Performance of Contracts, sec. 286.) The general rule thus announced, however, like most general rules, has its exceptions, one of which is, that want of mutuality may be waived by the subsequent conduct of the person against whom the contract could not originally have been enforced; and the author above referred to, in further considering the want of mutuality as a bar to specific performance, in section 293 says: "Mutuality may be waived by the subsequent conduct of the person against whom the contract could not originally have been enforced. Thus, where a purchaser contracts for an estate with a person having no title, or not such as he affects to sell, and the contract, therefore, is not mutual for want of interest in the vendor, yet if the purchaser investigate the title and make requisitions or concur in proceedings for the purpose of remedying the defect, he is afterwards precluded from setting up the original want of mutuality in the contract." And the author of the article upon Specific Performance in 26 American and English Encyclopedia of Law (2d ed. p. 115,) says: "It has been held, also, that a purchaser who knows that the title is insufficient at the time he contracts for it and that it will take time to make it perfect, or who, learning this after his purchase, acquiesces in the delay and enters further into the execution of the purchase, is bound by such acquiescence, and will not be heard to complain of the title offered him or the delay in perfecting it."

Another exception to the rule is where time is not made the essence of the contract and the vendor is not able to make a good title at the time the contract ought to be performed. A court of equity will afford him relief if he subsequently perfect his title and is prepared to make a good title before decree. (*Seaver* v. *Hall,* 50 Neb. 878; *Hepburn* v. *Dunlop,*

1 Wheat. 179; *Hepburn* v. *Auld,* 5 Cranch, 262; *Dresel* v. *Jordan,* 104 Mass. 407; *Williamson* v. *Neeves,* 94 Wis. 656.) In this case the appellant was informed before the contract was entered into that forty acres of the land belonged to Walter S. Brown, and while the invoice was being made he was told that Walter S. Brown had conveyed the forty acres to the appellees, and he then expressed satisfaction that said conveyance had been made, and thereafter continued with the invoice of the hardware stock and afterwards recognized the contract as being in force by seeking to forfeit the same. Under the terms of the contract the appellant had a reasonable time in which to invoice the hardware stock and get ready to perform the contract on his part, and we see no reason why the appellees should not have at least the same length of time in which to perfect their title and get ready to perform the contract on their part. In *Mason* v. *Caldwell,* 5 Gilm. 196, on page 208, it was said: "Equity may enforce the specific performance of a contract for a sale of land although the vendor has no title at the time of the sale, or even at the time of filing the bill, so as he can make a good title at the time of the decree." And in Story's Equity Jurisprudence (sec. 777) it is said: "If there has been no unnecessary delay, courts of equity will sometimes decree a specific performance in favor of the vendor although he is unable to make a good title at the time when the bill is brought, if he is in a condition to make such title at or before the time of the decree." And in *Scaver* v. *Hall, supra,* it was held (p. 882) : "Where time is not of the essence of the contract and the vendor is not able to make a good title at the time the contract ought to be performed, nevertheless a court of equity will afford him relief if he subsequently perfect his title and tender a good conveyance before decree." In *Dresel* v. *Jordan, supra,* on page 414, the court said: "If the obligation of the contract be mutual, and the seller is able, in season, to comply with its requirements, on his part, to make good the title which he has undertaken to convey, we see no

ground on which the purchaser ought to be permitted to excuse himself from its acceptance."

It is, however, urged that this court, in the case of *Gage v. Cummings*, 209 Ill. 120, is committed to the doctrine that unless the contract is of such a character upon the day it is executed that specific performance thereof can be had upon that day by either party, it lacks mutuality. That case differs in several respects from this case. There a day was fixed when the contract was to be performed, and the bill was filed by Henry H. Gage and Mary B. Gage for the specific performance of a contract made by Henry H. Gage alone, with Norman P. Cummings. Had Henry H. Gage been given a reasonable time, by the terms of the contract, in which to perform, and had he, before filing his bill, perfected the title in himself by obtaining a deed from Mary B. Gage and tendered to Cummings a good conveyance, that case would be more in point, and still it would not be on all-fours with the case at bar. The general rule hereinbefore announced was applied in that case; and properly so, but this case falls within an exception to that general rule, hence that case is not of controlling force here.

It is next contended that Catherine W. Brown, by her deed of February 26, 1904, did not release her dower in all of said premises, as it is urged at the time it was executed the appellees were the owners of but three-sevenths of the fee in the forty acres conveyed to them by Walter S. Brown. The fee to the remaining four-sevenths of said forty acres, it is said, at that time was in the other children of David W. Brown, deceased. This contention is not borne out by the record. Long prior to the execution of the contract between appellees and appellant the brothers and sisters of Walter S. Brown had conveyed to him their interest in said forty acres, but the deeds had been mislaid and were not recorded. After the commencement of this suit that fact was discovered and new deeds were made to supply those which had been lost. The loss of said deeds or the failure to record

them did not divest the title of Walter S. Brown. It is clear that Catherine W. Brown, on the 26th day of February, 1904, released her dower in said premises to the appellees, who were on that day the owners of the fee of said farm, and that the deed proffered by appellees to appellant, if accepted, would have conveyed the premises to the appellant, disencumbered of the dower of said Catherine W. Brown in all of said lands.

It is further contended that there is a defect in the title to one hundred and twenty acres of the land on account of a possible dower interest therein in the wives of W. P. Davie and Henry L. Sherwood, and by reason of a defective sale under a sale mortgage which appears in the chain of title. Davie entered the land in 1855 and conveyed the same by warranty deed on March 23, 1858, to Sherwood. That deed does not recite whether Davie was single or not, but a deed executed by him in 1862 recites he was then a bachelor. On the day Sherwood received the deed from Davie he executed to Davie a sale mortgage on the same premises for $500, and the premises were sold under said mortgage by Davie on November 20, 1861. While a court of equity will never force upon a vendee a doubtful title, immaterial defects and technical objections, where the purchaser gets substantially what he contracts for, will not be permitted to be set up to defeat a decree of specific performance. (26 Am. & Eng. Ency. of Law,—2d ed.—p. 108.) Here the title passed out of Davie in 1858, and in 1862 he recites in a deed executed by him he was then a bachelor. While such statement would not be conclusive of the fact, it affords, we think, presumptive evidence Davie was unmarried in 1858, and after the lapse of time which has intervened since the execution of the sale mortgage and the sale thereunder, as it was made by Sherwood to Davie on the same day that Davie conveyed said premises to Sherwood, it will be presumed it was a purchase money mortgage and that Sherwood's wife, if he had a wife, had no dower in said premises, and that by reason of

the time which has intervened since the sale under the sale mortgage, Sherwood and persons claiming under him are barred by their *laches* from questioning the validity of the sale under said sale mortgage. In *Solt* v. *Anderson*, 62 Neb. 153, it was held specific performance will not be denied on the ground that there are apparent defects in the title, where the evidence shows such defects to be dormant and of no validity as against the property.

It is also claimed that the $7500 mortgage placed upon the farm by the appellees is not in accordance with the terms of the contract. The contract provides : "It is further agreed that said party of the first part will secure a loan of seventy-five hundred dollars ($7500) for five years at five per cent interest, and that said premises will be conveyed by good and sufficient warranty deed, subject to said mortgage, and that said Gibson will assume the payment thereof according to the conditions of said mortgage." The appellees placed a mortgage for $7500 upon said farm with the Prudential Insurance Company of America, bearing interest at five per cent per annum, payable annually. The mortgage also contained an insurance and forfeiture clause, and provided for the payment of taxes upon the mortgage indebtedness by the mortgagor should the indebtedness be taxed in the county or State where the land was situated, and for the payment of solicitor's fees in case of foreclosure. The appellant agreed the appellees should leave on the farm a mortgage for $7500, bearing five per cent interest, which he was to assume and agree to pay according to the conditions of said mortgage. We are of the opinion the appellees were authorized to place upon the farm a mortgage in the form and containing the conditions usually found in farm mortgages and to make the indebtedness bear interest at five per cent per annum, payable annually, and the appellant having agreed to assume the payment of said mortgage indebtedness according to the conditions of said mortgage, he was bound to accept a deed subject to said mortgage. It was certainly the understand-

ing of the parties that the appellees should have the right to raise, by mortgage, $7500 on said lands, bearing five per cent interest. To do this the appellees, if they acted in good faith, had the right to execute a mortgage upon which they could raise the money, and it is well known to all that the interest on five-year mortgage loans is usually made payable, not at the end of the loan, but annually or semi-annually, and the conditions contained in said mortgage are not unusual or exceptional.

It is also contended that the title was encumbered by mortgages other than the $7500 mortgage at the time appellees offered to convey said premises to the appellant. The appellees had arranged to take up said mortgages with the money they were to receive from appellant for the land, and had, by an arrangement with the bank that controlled said mortgages, releases in their possession ready to be delivered to appellant. That was all that was necessary. All the appellant was entitled to receive was a title free and clear of all encumbrances other than the $7500 mortgage, which he was to assume and pay.

It is insisted that at the time the appellees tendered to appellant a deed for said premises the contract had been rescinded by appellant. It appears the appellees were ready, willing and anxious to close with appellant at the time he demanded a deed of them in Henley's office, and only asked time to verify the footings of the invoice of the hardware stock and time for Henley to go to and return from the bank where the papers were on deposit, which bank was located in the same building in which Henley's office was located. The law is not so unreasonable as to require the appellees to accept the statement of appellant as to the amount of the invoice without verification, or to require them to keep their deed and other title papers at all times in their hands ready to deliver to the appellant on a moment's notice. We are impressed that what was done by the appellant at Henley's office by way of making a tender and demanding a deed was

not an offer on his part to perform his contract made in good faith, but that such action was taken under a mistaken view of the law, and with the expectation that thereby he would be enabled to put the appellees at a disadvantage and escape the obligations of his contract.

It is also said the court erred in requiring the appellant to surrender his stock of hardware to the appellees, as it is claimed he has sold portions thereof and added to said stock since he rescinded said contract. If the appellees were entitled to a decree for specific performance the appellant could not defeat that right by refusing to perform his contract and by afterwards changing the hardware stock.

We have considered numerous questions raised in this case, by reason of the earnestness with which they have been urged upon our attention by counsel for appellant, which we do not deem important to a correct decision of the case. When the appellees called upon the appellant to perform the contract he placed his refusal upon the grounds that the farm was encumbered by mortgages other than the $7500 mortgage which he was to assume, and that he had offered to perform the contract on his part and the appellees had refused to perform, and that by reason of their failure to perform he had rescinded the contract, and that the contract was not in force. By placing his refusal to perform the contract on those grounds he waived all other contentions which he now makes as a reason why he should not perform the contract. "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he can not, after litigation has begun, change his ground and put his conduct upon another and a different consideration. He is not permitted thus to amend his hold. He is estopped from doing it by a settled principle of law." *Ohio and Mississippi Railway Co.* v. *McCarthy,* 96 U. S. 258.

Finding no reversible error in this record the decree of the city court of Mattoon will be affirmed.

*Decree affirmed.*