Merchants Loan & Trust Company et al., Defendants in Error, v. City of Chicago, Plaintiff in Error.

Gen. No. 19,416.

1. MUNICIPAL CORPORATIONS, § 810*—when water certificates are due. Where water certificates and the ordinance under which they were issued provide for a refund of the amount advanced by citizens for the cost of service pipes when a revenue of ten cents per foot per annum is being derived from such pipes, such certificates are due when the evidence shows such revenue from permanent improvements; and if the certificates and ordinances should require a "permanent" annual revenue of ten cents, the certificates would still be due, since the word "permanent" must be given a relative and practical meaning.

2. MUNICIPAL CORPORATIONS, § 1151*—when defenses to collection of water certificates must be pleaded and proved. Where a city, acting within its charter powers, borrows and uses money for the extension of its water supply system, and issues water certifi-

rates to the citizens who lend the money, agreeing to repay the amount borrowed when a certain revenue is being derived, such city must plead, and has the burden of proving, in an action for repayment of the money borrowed, any defense based on the illegality or irregularity of the loan.

3. MUNICIPAL CORPORATIONS, § 1155*—*when authority of signers of municipal water certificate must be shown.* In an action on a water certificate, providing for the repayment of money borrowed which purports to have been executed by a city, and is authorized, it is not necessary to show the authority of the signers of the certificate, unless its execution is denied by a verified plea.

4. INTEREST, § 46*—*how computed.* Where a water certificate issued by a city provides for repayment of the amount borrowed, whenever a proper survey shows that a certain revenue is being derived, without interest if refunded within two years from date but with interest if not so refunded within two years, it cannot be contended that interest should only be allowed after two years from the date of the survey establishing the required revenue.

5. MUNICIPAL CORPORATIONS, § 1154*—*when city is liable for interest.* A municipal corporation is liable for interest where water certificates issued by it expressly provide for such interest.

Error to the Circuit Court of Cook county; the Hon. DEAN FRANKLIN, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed October 13, 1913.

**Statement by the Court.** The defendant in error, the Merchants Loan and Trust Company, February 13, 1913, in the Circuit Court of Cook county procured as executor of the last will of Lambert Tree a judgment for $4,908.96 against the City of Chicago. To reverse this judgment this writ of error has been sued out of this court by the City of Chicago.

The judgment was based on the following instrument in writing declared on and proved in a suit in *assumpsit* in the Circuit Court, tried there by the judge sitting without a jury:

"City of Chicago,
Department of Public Works,
Bureau of Engineering.

July 25, 1895.

It is hereby certified that Lambert Tree has advanced the sum of Twenty Seven Hundred and Sixty One and 73-100 dollars for the purpose of laying 985

feet 8 inch and 1348 feet 6 inch Water Pipe in South 40 Ave., from Adams Street to Van Buren St. and in West Jackson Street from South 40th Ave. to Hamlin Ave., which amount will be refunded to him without interest if so refunded within two years from the date hereof, but with interest at the rate of five per cent. per annum from and after the expiration of said two years if not so refunded within said two years, from any money belonging to the Water Tax Fund in the City Treasury not otherwise appropriated, whenever upon a proper survey it is shown that a revenue from frontage water rates of ten (10) cents per lineal front foot per annum is being derived from said pipe.

By order of the Commissioner,

James J. Graham,

Asst. Secretary.

$2,761.73 L. B. Jackson, City Engineer.''

The declaration alleged that in the lifetime of said Tree and on the date of this instrument he paid and advanced to the City of Chicago $2,761.73 for the purpose mentioned in the certificate and the City of Chicago thereupon issued to him, through its duly authorized agent, the said certificate which is set forth *in haec verba* in the declaration, together with its alleged legal effect of a promise by the said City according to its terms.

It is further alleged in said declaration that a proper and legal survey, as provided for and required in said certificate, was made in 1909 and in 1910, but that said surveys showed that a revenue from frontage water rates of ten cents per lineal foot per annum was not being derived from said pipe, but that thereafter in 1912 another proper and legal survey was made and said survey showed that a revenue from frontage water rates largely in excess of ten cents per lineal foot for each lineal front foot of said water pipe per annum was being derived from said water pipe so laid in said streets. It is also alleged that at the time of filing the declaration there was such a revenue largely in excess of ten cents for each lineal foot per annum, and that

Merchants Loan & Trust Co. v. City of Chicago, 182 Ill. App. 298.

there was in the city treasury sufficient money belonging to the water tax fund, and composing a surplus of net income from the water rates which had not been otherwise appropriated or pledged, to pay to the plaintiff the principal and interest due to it as executor on said certificate.   The executorship of the plaintiff and a demand on the defendant for $2,761.73 with interest at five per cent. from July 25, 1897 (two years from the date of the certificate), together with a refusal by the City of such demand, are also duly alleged and the common money counts are added.

A demurrer to the special count in the declaration was filed and overruled and the defendant then filed the general issue.

On the trial the certificate was offered and received in evidence and the plaintiff supplemented the proof as follows:

It presented the testimony of the chief water assessor of the City of Chicago, who swore that he was chief of the department having in charge the making of surveys to ascertain the revenue that is being derived from frontage water rates, and showed by him and the written memorandum of a "Survey" on file in the department, that the annual revenue from the pipes mentioned in the certificate had on June 29, 1912 (about six months before this suit was begun) reached thirteen per cent. from permanent improvements on the streets involved.

It also proved that the persons purporting to sign the certificate as "assistant secretary" of the department of public works and as city engineer occupied in the administration of the city government of Chicago the positions mentioned at the date of the certificate. Further it proved that the certificate sued on had been continuously in the hands of Lambert Tree from the date of its issuance to his death and in the hands of his executor since; that at said date of issuance eight other similar certificates for various amounts, similarly signed and relating to the same general sub-

division, had been issued to Tree; that six of them, amounting to a sum between thirteen and fourteen thousand dollars, had been paid with interest in each case at five per cent. from July 25, 1897, to the date of payment; that this certificate sued on, after the survey mentioned had been made at the request of a representative of the Tree estate, was presented in July, 1912, by said representative to the commissioners of public works of the City of Chicago and to other officers of the City, and that said representative was informed by the Commissioner of public works that the principal would be "vouchered" and paid, but no interest, and that this determination was the result of an opinion rendered by the corporation counsel. No other objection was made by said commissioner to the payment.

Proof was also offered by the plaintiff that the representative of the Tree estate making the demand was informed by the comptroller of the City that there was over a million dollars in the proper fund from which this certificate was payable. It was admitted in open court that the city council had passed an appropriation ordinance in which a certain amount had been appropriated to pay, during the current municipal year, water pipe extension certificates and interest and a formal stipulation was made that there was in the water tax fund in the city treasury sufficient money "to pay all claims against that fund in existence at the time of bringing the suit and all lawful claims against it during the current municipal year." It was also admitted on the record that up to 1912 from May 16, 1892 (the date of an ordinance hereinafter mentioned) it was the custom of the City of Chicago to pay water pipe extension certificates like the one sued on with interest at five per cent. from two years after date on those issued before 1905, and at three and one-half per cent. on those issued after 1905; this distinction being made in consequence of ordinances hereinafter mentioned. The further evidence offered in the cause consisted of ordinances of the City of Chicago passed

by the city council at various dates between November 2, 1891, and the beginning of the suit. The first, passed November 2, 1891, is as follows:

"Be it ordained, etc. Sec. I. That from and after the passage of this ordinance (except where water pipe is in course of construction and now on the ground) and until the further order of this council, the commissioner of public works shall extend the water main only where the owners of property or persons desiring such extension shall advance and pay into the City Treasury a sum of money equal to the entire cost thereof, said money to be repaid to the person or persons so advancing the same when from the surplus of the net income from the water rates not otherwise appropriated or pledged there is in the City Treasury sufficient money therefor and when the City Comptroller shall so certify."

The next ordinance was passed on May 16, 1892. It is in full as follows:

"An ordinance Providing for the Laying of Water Mains. Whereas there is an urgent demand from every section of the city for street improvements and whereas it will be impossible to proceed with any of the streets now under assessment until proper provision is made for the extension of water mains; and whereas, this council has recently authorized the issuance of water certificates amounting to $1,000,000, the proceeds of which were to be used in extending and improving the water system; and whereas, it is of the utmost importance that no part of the proceeds of said certificates be used except for the extension of water mains in localities where the actual number of residents will warrant the outlay from a business standpoint; and whereas in the past it has been the practice to pass ordinances for street improvements in uninhabited subdivisions, which said ordinances were promptly repealed when the water pipe was laid; now therefore:

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CHICAGO; Sec. 1. That whenever an ordinance is hereafter passed by this council for the filling, grading, curbing and paving of any street, it shall be the

duty of the commissioner of public works to ascertain whether the street or streets on which said improvement is ordered contains a sufficient number of houses to pay a revenue to the City of ten (10) cents per lineal foot for every foot of water pipe laid on said street or streets, when, if such be the case, he shall at once proceed under the ordinance to lay the necessary water mains. If upon such examination it is ascertained that a revenue of ten (10) cents per lineal foot cannot be derived, the owners of property abutting on said street or streets shall be required to advance the money necessary to cover the cost of all pipe laid on every such street or streets, which said cost shall include the purchase, delivery and laying; provided that where water pipe is now on the ground the same shall be laid underground.

Sec. 2. The moneys advanced by owners of property for the laying of water mains as provided in Section 1 shall be returned by the City from moneys not otherwise appropriated whenever upon a proper survey it is shown that a revenue of ten (10) cents per lineal foot is being derived therefrom; provided that if the money so advanced is not paid back within two years that interest at the rate of 5 per cent. per annum shall be allowed after the expiration of two years until paid.

Sec. 3. All ordinances or parts of ordinances in conflict herewith are repealed.

Sec. 4. This ordinance to be in force and take effect from and after its passage."

July 25, 1892, there was passed another ordinance by the council, which provided that in the case any special assessment for the purpose of laying or extending any water main should be collected by the City of Chicago, the holder of the receipt therefor should be repaid said sum from the surplus of the net income from the water rates when the water rates derived from the laying of said main should equal ten (10) cents per lineal foot in the block where the property assessed is situated.

In the Revised Code of Chicago of 1897, section 1669 reads: "The commissioner of public works may ex-

tend water mains where the owners of the property or persons desiring such extensions shall advance and pay into the city treasury a sum of money equal to the entire cost thereof; and whenever upon a proper survey it is shown that a permanent annual revenue of ten cents per lineal foot is being derived from said water mains, then said money so advanced as afore-said shall be repaid to the person or persons so advancing the same. Provided, however, if the money so advanced is not paid back within two years, interest at the rate of five per cent. per annum shall be allowed after the expiration of said two years until paid."

Sections 1670 and 1671 concerning water mains were also introduced in evidence, but need not be recited here.

In the Chicago Code of 1905, section 1669 of the Revised Code of 1897 is repeated as section 1906, with the substitution, however, in the proviso of "interest at the rate of three and one-half per cent. per annum" for "interest at the rate of five per cent. per annum." Section 2128 of the Chicago Code of 1911, also introduced in evidence, is identical with section 1906 of the Code of 1905.

WILLIAM H. SEXTON, for plaintiff in error; NICHOLAS MICHELS, of counsel.

MUSGRAVE, OPPENHEIM & LEE, for defendants in error; JOHN H. S. LEE, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

The attack in this court upon the judgment of the Circuit Court in this cause is twofold. It is insisted, first, that the evidence below failed to show any liability of the City on the certificate sued on, because

of the lack of necessary elements to fix a municipal liability, and, secondly, that the court gave a wrong construction to the certificate and to the ordinance under which it was apparently issued, in holding that interest should be computed on the amount of the certificate from two years after its date instead of holding, as maintained by the City, that interest should be computed only from two years after the "survey," the results of which showed the certificate to be due. The objections made to the sufficiency of the proof of the liability are again divided. Some are made against the admissibility of the certificate in evidence and against its competency, when supplemented only by that which appears in the record, to prove a liability against the City at any time, and others against the adequacy of the evidence tending to prove the instrument due according to its terms.

The objection last mentioned is concerned with the evidence introduced by the plaintiff that "upon a proper survey it was shown that a revenue from frontage water rates of ten cents per lineal foot per annum was being derived from said pipe."

We think the evidence was sufficient. It is true that the ordinances constituting section 1669 of the Code of 1897, section 1906 of the Code of 1905 and section 2128 of the Code of 1911 make it the condition of repayment that a proper survey shall show that a *permanent* annual revenue of ten cents per lineal foot is being derived from the mains, but neither the instrument itself nor the ordinance of May 16, 1892, under which it may be presumed to have been issued, contains the word "permanent." The condition of repayment in each is a showing that a revenue of ten cents "is being derived."

But if the word "permanent" were in both instrument and ordinance, we do not see that it would alter the case. There is no way of assuring absolute "permanence" in this world and the term must be given a relative and practical meaning. The memorandum

of "survey" from the files of the City in connection with the testimony of Byrne, the chief water assessor of Chicago, showed that a revenue of more than ten cents per foot was derived from permanent improvements. The certificate was plainly due, therefore, according to its terms.

As to all other objections to the finding that the City was liable on the certificate produced in evidence, it seems to us sufficient to say that there is no sufficient pleading by the City under which they can be considered. Where, as in this case, the receipt of the money, its borrowing, that is, by the City from the holder of the certificate, was within the City's charter powers, the burden is upon the City to prove any defense, if any such defense exists, based on the illegality or irregularity of the loan which its formal written admission acknowledged and promises to repay. And not only is the burden on the city to prove such a defense, but it must plead it. *City of Chicago v. Peck*, 196 Ill. 260.

That the borrowing and using of the money mentioned in the certificate for the extension of its water supply system was within the charter powers of the City is not explicitly, at least, denied by it. There can be no reasonable doubt of it in view of the various statutory provisions of Illinois concerning the construction and maintenance of water works by municipalities.

Nor are the pleadings in any such condition that it is open to the defendant to contend that the certificate shows no obligation of the City because the authority of the signers of the certificate containing the admission of the loan and the promise to repay is not shown extraneously. The certificate, by all proper canons of interpretation, purports to be issued as the act of the City of Chicago, its admission and promise combined, and what the Supreme Court, speaking through Mr. Justice Vickers, said of a contract in

*Schuyler County v. Missouri Bridge & Iron Co.,* 256 Ill. 348, is in point:

"The execution of this contract was not denied by a verified plea, and appellant was therefore in no position to question the authority of the agents who signed it, on the trial. This rule applies to a municipal corporation as well as to an individual, and where an instrument purports to have been executed by a municipal corporation, if it is such an instrument as the municipality could, under any circumstances, issue, and its execution is not denied by a verified plea, then it is not necessary to prove the authority of the agent who signed the same on behalf of such municipality."

It is not necessary, in our view, to consider whether, under any form of pleadings, the defendant would have been allowed to attempt to show such want of authority on the part of its officers or to urge any other of the objections made to the validity of the certificate, after placing its refusal to pay it before litigation solely on the allegation that the interest demanded was not within the terms of the instrument; but it may be noted in passing that expressions of the Supreme Court of Illinois in this same case of *Schuyler County v. Missouri Bridge & Iron Co., supra,* and in *Gibson v. Brown,* 214 Ill. 330, and of the Supreme Court of the United States in *Ohio & M. R. Co. v. McCarthy* 96 U. S. 258, certainly seem to deny any right to do so.

For the contention that interest on the certificate in question should be allowed only after two years from the date of the survey establishing the "ten cent revenue," we see no tenable basis. The language of the ordinance and of the certificate alike seems to us plain and unambiguous, and the construction put on it by the court below is that which the City for many years placed on it. The money on the certificate is not to be repaid by the City until a survey has shown the required revenue. If that showing and repayment are within two years from the date of the certificate, the

repayment shall be without interest; if more than two years from that date, interest shall be allowed from the expiration of the two years to the date of repayment.

It is not material in this controversy that a municipal corporation in Illinois is not, except by express agreement, liable for interest on money not unlawfully received and held, because here the agreement is express. Nor if it were true would it be material, in face of the definite action of the city council, that it would be more just to the City that the interest should begin to run on these advances only from a date two years subsequent to the survey. Emphasis seems to be given to this argument by counsel for the City, but it is beside the question. However, the injustice of the actual provision is not apparent to us. If the required revenue should accrue within one year of the advances, the City, if the survey and the money were not demanded until the expiration of the two years, would have the use of the money for more than a year without interest. If the revenue was not shown for three years, the City would pay interest for a year, perhaps, on an investment which was at most only partially remunerative to it, but the council may be presumed to have thought that the gains to the City would on the whole equal the loss in the arrangement thus provided, and there is no evidence that it does not. As interest rates on the City's ordinary obligations have declined, the council has provided for a less rate on these special loans.

The judgment of the Circuit Court of Cook county is affirmed.

*Affirmed.*