Irl R. Larson, Appellant, v. Selma A. Johnson and Oscar H. Johnson, Appellees.

Gen. No. 46,052.

Opinion filed December 15, 1953.
Released for publication January 5, 1954.

JOHNSON & WILES, of Chicago, for appellant; WALTER E. WILES, of Chicago, of counsel.

ARTHUR ABRAHAM, of Chicago, for appellees.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a decree denying plaintiff specific performance of a contract for the purchase of defendants' beneficial one-half interest in certain trust property consisting of a 3-story 25-apartment building in the City of Chicago.

It appears that on March 15, 1950, plaintiff entered into a contract for the purchase of the one-half interest in question for $37,500, $2,000 being deposited as earnest money, $8,520 representing defendants' obligation under a mortgage to be assumed by plaintiff, and the balance to be paid on satisfactory proof of title and a deed. This contract also contained a provision which required prior approval of the sale by one Hanna Osterholm, owner of the other half interest in the property. In order to procure her approval, the contract was delivered to her lawyer who himself evinced an interest in acquiring the property. He did not procure her consent and did not return the contract. It was then revealed to the parties by the trustee of the legal title that it was not necessary to procure Hanna Osterholm's consent to the sale of defendants' interest, and a new agreement was executed on March 22, 1950, which was in all material and legal effects the same as the previous contract, with the exception that it did not contain the requirement making the sale subject to the approval of Hanna Osterholm. Thereupon, the attorney for plaintiff was directed by sellers' agent to order a title opinion. On April 10, 1950, defendants addressed a letter to plaintiff, couched in the formal and precise terms of a legal document, in which they stated that it had been represented to them by plaintiff that this agreement was an exact copy of the previous one; that upon examination, it was not such, and accordingly by reason of the misrepresentation so made, defendants repudiated the agreement. To the complaint which set forth the contract, recited its repudiation, and prayed for specific performance, defendants filed an answer and cross-complaint. By their answer they set up a single defense, to-wit: that the execution of the agreement was obtained by connivance, fraud, and misrepresentation in the manner before stated.

By their cross-complaint they alleged substantially the same facts, setting forth that when it came to their attention that the contract of March 22, 1950, was materially different from the previous agreement, they promptly terminated it. They pray in their cross-bill that the agreement be held to be illegal and fraudulent and that it be rescinded.

Upon these issues this case was referred to a master who heard the evidence and found for the plaintiff on the issue of fraud made by the pleadings. He held, however, that plaintiff could not obtain specific performance because of the indefiniteness of a provision in the contract that defendants should be given a lease of one of the apartments in the building at a monthly rental of $51.75 *for a term to be agreed upon.* The court approved the master's report and, therefore, the question presented to us is this: Should the relief asked for by plaintiff be denied, even though the issue of fraud, the only issue made by the pleadings, has been decided in his favor? The argument of defendants is that notwithstanding the fact that this was the only issue in the case, a court of equity will not decree specific performance of this contract because it is indefinite as to the term of the lease. Plaintiff argues that defendants having repudiated the contract on the ground of fraud, they cannot now shift their position or, as it is phrased in the authorities discussing the doctrine, "mend their hold."

 Plaintiff's position is amply supported by the authorities. *Gibson v. Brown,* 214 Ill. 330, 341; *Miller v. Gordon,* 296 Ill. 346, 352; *Danberg v. Langman,* 318 Ill. 266, 271; *Schuyler County v. Missouri Bridge & Iron Co.,* 256 Ill. 348, 353; *Vincent v. McElvain,* 304 Ill. 160, 164–5; *Ohio & Mississippi Ry. Co. v. McCarthy,* 96 U. S. 258, 267. The case last mentioned seems to be

the leading authority. The doctrine there stated was as follows:

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law. *Gold v. Banks,* 8 Wend. (N. Y.) 562; *Holbrook v. White,* 24 id. 169; *Everett v. Saltus,* 15 id. 474; *Wright v. Reed,* 3 Durnf. & E. 554; *Duffy v. O'Donovan,* 46 N. Y. 223; *Winter v. Coit,* 7 id. 288."

 Defendants seek to distinguish these cases on the ground that all that was said with respect to this doctrine in the Illinois decisions cited was *obiter dicta.* Their argument is that in each case the court took up the other defenses raised by the pleadings and decided them adversely to the defendant and only then did it affirm the doctrine above enunciated. When a court has before it various grounds urged for reversal and it decides that a certain number are valid, it does not follow that because the first ground would have been sufficient for reversal, the other grounds do not deserve equal recognition as the basis for the court's judgment. Whether a legal proposition stated in an opinion is *obiter dictum* is to be determined from a reading of the entire opinion. If the opinion expressed on a legal question is one casually reached by the court on an issue unrelated to the essence of the controversy or based on hypothetical facts, then it is *obiter dictum.* If, however, the question involved is one of a number of legal issues presented by the facts of that particular case, the court's decision on that question is not *dictum* even though it be the last ground of many decided by the court, all in support of its final conclusion. (Goodhart, 40 Y. L. J. 161, 180.) It is often stated that all

except that which is necessary to the decision of a case is *obiter dictum*. This is misleading, for nothing but the bare finding of the court is absolutely necessary to its decision as between the parties. For the purpose of legal precedent, we must look to all the issues presented by the facts of the case and to the legal principles applied by the court in the final determination of those issues. Our Supreme Court has made a distinction between judicial *dictum* and *obiter dictum*, meaning that a legal principle deliberately passed upon by a court establishes a precedent. *Scovill Mfg. Co. v. Cassidy*, 275 Ill. 462, 470. It is in the light of this understanding of what constitutes *obiter dicta* that we should consider the cases which have been cited in support of the doctrine. Two of these (*Vincent v. McElvain, supra,* and *Miller v. Gordon, supra*), are specially in point.

In *Vincent v. McElvain,* the seller Vincent agreed to sell certain land to McElvain and in due course to furnish an abstract showing good title and to pay taxes. The buyer repudiated on the ground that the abstract did not show a good title. The question involved was whether an order of the probate court, on which title depended, was void for want of jurisdiction in that court. It was held that the order was valid. Appellant on hearing urged three additional reasons—insufficient description of the land, failure to pay taxes, and failure to tender an adequate abstract. The court said there was no merit in any of these objections and then said:

"Furthermore, it is not necessary to give attention to the last three objections to the title in order to reach a correct decision in this case, for the reason that appellant based his refusal to perform the contract on the first ground considered and he thereby waived the

41

other grounds. *Gibson v. Brown,* 214 Ill. 330; *Miller v. Gordon,* 296 id. 346."

This is clearly an explicit statement of a legal principle decisive of the case.

In *Miller v. Gordon, supra,* appellant seller, when called upon to perform his contract, refused upon the ground that he could sell the property for more money than the buyer had contracted to pay. The contract provided that the purchaser was to execute a lease to the vendor for a store and basement (except part used by tenants of the building) to April 30, 1924, at a monthly rental of $125. The seller presented five defenses, including one similar to that presented by defendants in the instant case; that is, that the provision for a lease was indefinite and incapable of being specifically performed. The court held against the seller on all these points. On the question of the lease, the court held that if it were in any sense indefinite, an offer by the buyer to allow the attorney for the seller to draw the lease and include in it any terms and conditions consistent with the lease described in the contract and his offer in court to permit the chancellor to order any lease he considered equitable, deprived the seller of any right to complain. After having discussed these points made by the seller, the court went on to say that *they had given consideration to many matters not necessary to a correct decision of the case,* but had done so because of the earnestness with which counsel had brought them to the attention of the court; that the seller, having based his refusal upon the ground that he could sell his property for more money, had waived all other points. They then reaffirmed the principle stated in *Gibson v. Brown, supra,* where the court had likewise considered other questions because of the earnestness with which they had been urged by counsel, but did not consider them important to a correct

42

decision of the case, as the appellant was bound only to those grounds which he had asserted at the time he was called upon to perform. The same principle is reasserted in *Danberg v. Langman, supra.*

It is urged by defendants that the principle in question rests upon a doctrine of estoppel and that unless the party urging it has been misled to his detriment, he cannot invoke it. They cite *Rand v. Cronkrite,* 64 · Ill. App. 208, 223–4 (1896). There, plaintiffs were engaged to negotiate a sale of the stock of Rand McNally & Co. The agents had not procured a purchaser bound to buy the stock, but an agreement with one who contemplated putting the stock on the market and made his payment therefor contingent upon the success that might follow a public offering. On the trial the plaintiffs argued that at the time the defendants repudiated, one of the parties stated in oral conversation that they were doing so because the time for the making of the sale had expired and that therefore they could not object on the ground that no sale such as that authorized by the contract had been made. The court held that the principle in *Ohio & Mississippi Ry. Co. v. McCarthy, supra,* did not apply; that the defendants were entitled to show that there had been no actual procuring of a purchaser bound to buy the stock and that they were not limited to the defense which it is alleged they stated at the time of the repudiation, to-wit: that the contract had expired by limitation. Aside from the fact that this case was decided in 1896, long before *Gibson v. Brown, supra* (1905), and other cases heretofore cited in support of the doctrine, the facts are obviously different from the instant case, where defendants by an instrument in writing served notice resting upon a particular ground of merit and, having failed in the meritorious defense, now seek to interpose a technical defense entirely without merit.

43

Defendants also cite *G. Amsinck & Co. v. Springfield Grocer Co.*, 7 F.2d 855, 859 (C. C. A. 8). There the plaintiff sought to recover damages for the defendant's refusal to receive a shipment of Java white granulated sugar, pursuant to an agreement. The original refusal to receive the sugar was based on a claim that the defendant had no contract with the plaintiff. After the court had expressed the view that there was a contract and that the plaintiff was entitled to recover, the defendant filed a second answer, alleging that it had lately discovered that the sugar shipped was not Java white granulated sugar. It was argued that the defendant could not change its original ground of defense. The court, referring to *Railway Co. v. McCarthy, supra,* said that the doctrine rested upon estoppel and that inasmuch as the defendant did not know of the defense in question, it could not be held to be estopped from raising it upon discovery.

Reasoning from the foregoing decisions, defendants argue that the doctrine is not applicable unless the second defense alleged is inconsistent with the first, citing *People v. Cohen,* 355 Ill. 499, and *Quinn v. Olsen,* 298 Fed. 704. In *People v. Cohen,* a petition was filed for a writ of mandamus to compel the State Civil Service Commissioners to reinstate the relator as assistant-chief factory inspector. The court there said (p. 503):

"The statement filed by the relator within five days after his removal admitted that he was discharged, and he demanded a hearing before the commission on the sole ground that the charge was invalid because it was based on political causes. It was not until after two hearings were had upon that issue, and more than two months after his discharge, that he made a motion to be reinstated because the statement of discharge was not signed by the appointing officer. The theory of the motion is utterly inconsistent with the allegations of his original statement. The statement did not question

44

the fact of his discharge by the appointing officer but admitted it. The motion, however, asserts that he was not discharged by the appointing officer. It is a general rule that where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and assign another and an inconsistent cause for his action. *Schuyler County v. Missouri Bridge Co.,* 256 Ill. 348; *Miller v. Gordon,* 296 id. 346."

The case supports plaintiff's position, unless we give unwarranted and undue emphasis to the word "inconsistent." There *is* an inconsistency in repudiating on the ground of fraud and then resorting to a technical defense.

In *Quinn v. Olsen, supra,* the plaintiff brought suit to recover damages for breach of a contract for the sale of land. Both parties to the contract knew that litigation questioning the plaintiff's title was impending at the time the contract was signed and that the plaintiff would have to defend this litigation. This he did with due diligence, but after termination of the litigation, which took about two years, he further delayed for a period of four months. The court held that this delay constituted a good defense to the suit. The plaintiff contended, however, that the defendant at the time performance was tendered said that he ought not to be expected to take the land when it had gone down in price after more than two years, and that he was bound to that one statement for repudiation. On this aspect of the case, the court said (pp. 708, 709):

"Defendant was not a lawyer, and he was not called upon to couch his refusal in legal phraseology. What he said was not susceptible of the construction that he refused to accept solely because of the depreciation

45

of the value of the land, and was not inconsistent with the defense of failure to perform within a reasonable time."

The obvious differences between that case and the instant one are apparent.

■ We have concluded, from our examination of the cases that so far as the Illinois doctrine is concerned, it is not limited to equitable estoppel. The reviewing courts which announced the principle were familiar with the doctrine of equitable estoppel and there was no occasion for dressing it up with a subtitle. The courts expressed and intended something more with respect to the conduct of one who enters into a solemn written engagement and then repudiates it. Even though no formal duty may be imposed as a rule of law, it is the common practice among business men and contracting parties, out of a sense of ethical obligation or because the repudiating party knows he will appear unfair and arbitrary if he did otherwise, to state a reason for repudiation. It is from this practice that courts developed the principle or doctrine we are here considering. While it is not subjected to the confines of the principle of equitable estoppel, there are limitations upon its application.

■ These limitations are derived from a comparison of the opinions in those cases where the courts have not applied it and those in which the courts have adopted it. They are definable as follows: If there are meritorious and equitable defenses such as existed in *Rand v. Cronkrite, supra,* and *Amsinck & Co. v. Springfield Grocer Co., supra,* and if, by inadvertence or the casual character of the repudiation or the circumstances under which it occurred, it would be inequitable to apply the doctrine, then a court ought to allow the new defense. This is how the doctrine emerges from the cases which have considered it. That

46

this is the common method for the development of our law and represents its unique and constructive character is demonstrated in "Introduction to Legal Reasoning," Levi (U. of C. Press, 1949).

 There is still another reason why we think the defense is not well-founded. Defendants neither by the answer nor the counterclaim nor in any formal way ever raised the defense now interposed. What they say, in substance, is that the complaint states no case at all for specific performance because of the uncertainty of the contract and that this is a question which does not have to be raised at any particular time or in any form. It is true that in equity something more is expected with respect to the definiteness and certainty of contracts than that which may serve as a basis for an action at law. However, that is an equitable rule and is to be applied equitably. In this case the lease in question related to one of twenty-five apartments and was a matter incidental to the main deal. While the provisions with respect to the lease are indefinite, in that a term was not specifically stated but was to be agreed upon, plaintiff offered to give defendants a lease for any term they might name and that, in our opinion, was sufficient to correct the omission. *Miller v. Gordon,* 296 Ill. 346. Only one case (*Westphal v. Buenger,* 324 Ill. 77), cited by defendants relevant to this point deserves consideration. There, the agreement provided that the buyer was to take the property subject to certain mortgages, but the terms of the contract with respect to the maturity of notes and trust deed were uncertain. The buyer sought to correct this omission by offering to pay all in cash. The court said that even though it might be assumed that cash is generally more desirable than a mortgage, it is well known that a seller will often prefer a mortgage to cash, and the court could not make a new and different contract

in that respect. This related to the substance and main matter of the agreement and is distinguishable from the instant case.

██ Reading the record here, it becomes clear that defendants for their own reasons, having nothing to do with their present defense of uncertainty, repudiated the contract and that at the time they did so, the only reason they could think of was that given in their carefully prepared letter of April 10, 1950, that is, misrepresentation and fraud. By their answer and cross-complaint this was the only issue presented, and all the evidence was directed toward that issue. Sometime during the proceeding, when it must have appeared to them that they could not sustain this charge of fraud, they shifted their ground to the indefiniteness of the lease provision. We are of the opinion that in equity and good conscience the principle restricting defendants to the defense set forth in their repudiation of the contract should be applied. On that ground they failed, and a decree should be entered against them.

Decree reversed and cause remanded with directions to take such further proceedings as are consistent with the views here expressed.

*Decree reversed and cause remanded with directions.*

TUOHY and ROBSON, JJ., concur.