COMMONWEALTH EDISON COMPANY et al., Plaintiffs,

v.

ALLIS–CHALMERS MANUFACTURING COMPANY et al., Defendants.

CITY OF SPRINGFIELD, a municipal corporation of the State of Illinois, Plaintiff,

v.

ALLIS–CHALMERS MANUFACTURING COMPANY, General Electric Company, Sangamo Electric Company, Defendants.

Civ. A. Nos. 61 C 1277 and related cases, 62 C 348.

United States District Court
N. D. Illinois, E. D.

Oct. 18, 1962.

See also 210 F.Supp. 557; 211 F. Supp. 729.

Plaintiffs' counsel:

Charles A. Bane, Robert F. Hanley, Thomas L. Nicholson, Richard E. Powell, Isham, Lincoln & Beale, Max Swiren, Neil Flanagin, Chicago, Ill., for Commonwealth Edison Co. and Commonwealth Edison Co. of Indiana, Inc.

Rodney A. Dunnette, City Atty., Austin, Minn., Seymour F. Simon, Chicago, Ill., for Austin Utilities and City of Austin, Minn.

Robert W. Bergstrom, Bergstrom & Brizius, Chicago, Ill., H. R. Hanley, William G. Porter, Hanley, Costello & Porter, Rapid City, S. D., for Black Hills Power & Light Co.

George H. Jirgal, Chapman & Cutler, Chicago, Ill., for Central Illinois Electric & Gas Co. and Iowa Electric Light & Power Co.

Harry E. Witherell, Davis, Morgan & Witherell, Peoria, Ill., for Central Illinois Light Co.

Ove B. Dendtler, Stevenson, Dendtler & McCabe, Chicago, Ill., for Central Illinois Public Service Co.

John C. Melaniphy, Chicago, Ill. (Seymour F. Simon, Chicago, Ill., Charles S. Rhyne, Brice W. Rhyne, Lenox G. Cooper, Rhyne & Rhyne, Washington, D. C., of counsel), for City of Chicago, Ill.

Paul C. Holmberg, City Atty., Ernest G. Kroger, Grand Island, Neb., Seymour F. Simon, Chicago, Ill., Charles S. Rhyne, Brice W. Rhyne, Lenox G. Cooper, Rhyne & Rhyne, Washington, D. C., for City of Grand Island, Neb.

James M. Byrne, Highland, Ill., Seymour F. Simon, Chicago, Ill. (Charles S. Rhyne, Brice W. Rhyne, Lenox G. Cooper, Rhyne & Rhyne, Washington, D. C., of counsel), for City of Highland, Ill.

W. P. Gilbert, K. F. Montgomery, G. E. Hale, V. T. Squires, Wilson & McIlvaine, Robert W. Bergstrom, Bergstrom & Brizius, Chicago, Ill., for Illinois Power Co.

Seymour F. Simon, Chicago, Ill., Ed. S. Carroll, Independence, Mo. (Gilbert R. Titus, Independence, Mo., Rhyne & Rhyne, Charles S. Rhyne, Washington, D. C., of counsel), for City of Independence, Mo.

Daniel P. Ward, Edward E. Plusdrak, Thomas A. Hett, Chicago, Ill. (Ronald W. Olson, Chicago, Ill., of counsel), for Cook County, Ill.

James O. Smith, Clement F. Springer, Springer & Smith, Chicago, Ill., for Interstate Power Co.

William B. Waterman, Walter S. Rogowski, Davenport, Iowa, for Iowa-Illinois Gas & Electric Co.

Howard A. Steele, Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, Iowa, for Iowa Power & Light Co.

Robert W. Bergstrom, Bergstrom & Brizius, Chicago, Ill., Robert Valentine, Valentine, Greenleaf & Griffing, Centerville, Iowa, for Iowa Southern Utilities Co.

Thomas C. Rose, City Atty., Jacksonville, Ill., Orville N. Foreman, Robinson, Foreman, Rammelkamp, Bradney & Hall, Jacksonville, Ill., Barnabas F. Sears, Lloyd J. Tyler, Jr., Sears, Streit, Tyler & Dreyer, Chicago, Ill., for City of Jacksonville, Ill.

Clemence A. Nordhoff, Jasper, Ind. (Seymour F. Simon, Chicago, Ill., of counsel), for City of Jasper, Ind.

Glen H. Bell, George G. Blake, Aberg, Bell, Blake & Metzner, Madison, Wis., Robert W. Bergstrom, Bergstrom & Brizius, Chicago, Ill., for Lake Superior Dist. Power Co.

Ralph D. Nelson, City Atty., Lincoln, Neb. (Seymour F. Simon, Chicago, Ill., Charles S. Rhyne, Brice W. Rhyne, Lenox G. Cooper, Rhyne & Rhyne, Washington, D. C., of counsel), for City of Lincoln, Neb.

William T. Rieser, Rieser, Stafford, Rosenbaum & Smith, Madison, Wis., Robert W. Bergstrom, Bergstrom & Brizius, Chicago, Ill., for Madison Gas & Electric Co.

Thomas C. McConnell, Herbert C. Paschen, Francis J. McConnell, Chicago, Ill. (George A. Lane, Chicago, Ill., of counsel), for Metropolitan Sanitary Dist. of Greater Chicago.

John J. Fleming, City Atty., George A. Bowman, Jr., Asst. City Atty., Milwaukee, Wis. (Seymour F. Simon, Chicago, Ill., Rhyne & Rhyne, Charles S. Rhyne, Brice W. Rhyne, Lenox G. Cooper, Washington, D. C., of counsel), for City of Milwaukee.

C. J. Rosenberger, Muscatine, Iowa, Seymour F. Simon, Chicago, Ill. (Charles S. Rhyne, Brice W. Rhyne, Lenox G. Cooper, Rhyne & Rhyne, Washington, D. C., of counsel), for Board of Water and Light Trustees of City of Muscatine, Iowa.

John C. Lawyer, Lawyer, Friedrich, Petrie & Tweedle, Hammond, Ind., for Northern Indiana Public Service Co.

Robert W. Bergstrom, Bergstrom & Brizius, Chicago, Ill., Donald E. Nelson, Gen. Counsel, N. S. P. Co., Minneapolis, Minn., for Northern States Power Co. (a Minnesota corporation) and Northern

States Power Co. (a Wisconsin corporation).

Robert W. Bergstrom, Bergstrom & Brizius, Chicago, Ill., Ralph Mauch, Huron, S. D., for Northwestern Public Service Co.

Robert W. Bergstrom, Bergstrom & Brizius, Chicago, Ill., Cyrus A. Field, Field, Arvesen, Donoho & Lundeen, Fergus Falls, Minn., for Otter Tail Power Co.

Paul G. Jasper, Plainfield, Ind., for Public Service Co. of Indiana, Inc.

Andrew C. Cecere, City Atty., Richmond, Ind., Seymour F. Simon, Chicago, Ill., for City of Richmond, Ind.

I. J. Feuer, Sp. Counsel, Springfield, Ill. (Seymour F. Simon, Chicago, Ill., Charles S. Rhyne, Brice W. Rhyne, Lenox G. Cooper, Rhyne & Rhyne, Washington, D. C., of counsel), for City of Springfield, Ill.

J. Weston Miller, Miller, Fairman, Sanford, Carr & Lowther, Ralph E. Hunt, City Atty., Springfield, Mo., Seymour F. Simon, Chicago, Ill. (Charles S. Rhyne, Rhyne & Rhyne, Washington, D. C., of counsel), for City of Springfield, Mo.

James Messer, Jr., City Atty., Tallahassee, Fla. (Seymour F. Simon, Chicago, Ill., Rhyne & Rhyne, Charles S. Rhyne, Brice W. Rhyne, Lenox G. Cooper, Washington, D. C., of counsel) for City of Tallahassee, Fla.

Lee A. Freeman, Sp. Counsel, James J. Costello, Legal Counsel, James E. Harmon, Asst. Legal Counsel, Chicago, Ill., for Board of Trustees of University of Illinois.

Martin R. Paulsen, Van B. Wake, John G. Quale, Paulsen, Wake & Prosser, Milwaukee, Wis. (Richard K. Decker, Lord, Bissell & Brook, Chicago, Ill., of counsel), for Wisconsin Electric Power Co. and Wisconsin Michigan Power Co.

R. J. Sutherland, Ralph E. Axley, Petersen, Sutherland, Axley & Brynelson, Madison, Wis., Robert W. Bergstrom, Bergstrom & Brizius, Chicago, Ill., for Wisconsin Power & Light Co.

William J. Froelich, Jacob I. Grossman, Seymour Tabin, Froelich, Grossman, Teton & Tabin, Chicago, Ill., for Wisconsin Public Service Corp.

William G. Clark, Atty. Gen. of Illinois, Lee A. Freeman, Sp. Asst. Atty. Gen., of Illinois, Edward H. Marsalek, Asst. Atty. Gen. of Illinois, Chicago, Ill., for State of Illinois, for itself, its Agencies and Public Institutions and People of State of Illinois, intervenor-plaintiff.

Defendants' counsel:

Hammond E. Chaffetz, John C. Butler, William H. Van Oosterhout, William R. Jentes, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for Westinghouse Electric Corp.

John T. Chadwell, Richard M. Keck, Snyder, Chadwell, Keck, Kayser & Ruggles, Chicago, Ill., for General Electric Co.

Holmes Baldridge, Stiefel, Greenberg, Burns & Baldridge, Chicago, Ill., for Allis-Chalmers Mfg. Co.

John Paul Stevens, Norman J. Barry, M. I. Mishkin, Richard L. McIntire, Rothschild, Hart, Stevens & Barry, Chicago, Ill., for A. B. Chance Co.

Edward R. Johnston, Thompson, Raymond, Mayer, Jenner & Bloomstein, Chicago, Ill., for Allen-Bradley Co., Clark Controller Co., Cutler-Hammer, Inc., Lapp Insulator Co., McGraw-Edison Co., Ohio Brass Co. and Square D Co.

Charles M. Price, Robert C. Keck, Valentine A. Weber, Jr., MacLeish, Spray, Price & Underwood, Chicago, Ill., for Carrier Corp. and C. H. Wheeler Mfg. Co.

Earl E. Pollock, Frederic S. Lane, Sonnenschein, Lautmann, Levinson, Rieser, Carlin & Nath, Chicago, Ill., Jacob Imberman, Proskauer, Rose, Goetz & Mendelsohn, New York City, for Cornell-Dubilier Electric Corp. and Federal Pacific Electric Co.

John Paul Stevens, Norman J. Barry, M. I. Mishkin, Richard L. McIntire, Rothschild, Hart, Stevens & Barry, Chicago, Ill., Lester Kissel, Meyer, Kissel,

Matz & Seward, New York City (E. F. Wentworth, Jr., New York City, of counsel), for Foster Wheeler Corp.

Neil McKay, Winston, Strawn, Smith & Patterson, Chicago, Ill., for Hubbard & Co.

Timothy G. Lowry, Owen Rall, Elroy C. Sandquist, Jr., Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., Owen Brooke Rhoads, Barnes, Dechert, Price, Myers & Rhoads, Philadelphia, Pa., for I-T-E Circuit Breaker Co.

Harold T. Halfpenny, Halfpenny, Hahn & Ryan, Chicago, Ill., Joseph W. Burns, Austin, Burns, Appell & Smith, New York City, for Ingersoll-Rand Co.

Roland D. Whitman, Joseph A. Conerty, Ross, McGowan & O'Keefe, Chicago, Ill., for Joslyn Mfg. & Supply Co. and Porcelain Insulator Corp.

Lloyd M. McBride, McBride, Baker, Wienke & Schlosser, Chicago, Ill., for Kuhlman Electric Co.

W. Donald McSweeney, Mitchell S. Rieger, John A. Pigott, Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., William H. Ferrell, Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, Mo., for Moloney Electric Co.

Jacob H. Martin, Sydney G. Craig, Martin Bogot, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for H. K. Porter Co., Inc.

W. Donald McSweeney, Mitchell S. Rieger, John A. Pigott, Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., for Sangamo Electric Co.

John Paul Stevens, Norman J. Barry, M. I. Mishkin, Richard L. McIntire, Rothschild, Hart, Stevens & Barry, Chicago, Ill., Norman A. Stoll, Reinhardt, Coblens & Stoll, Portland, Or., for Schwager-Wood Corp.

Edward R. Adams, Miller, Gorham, Wescott & Adams, Chicago, Ill. (Mac Asbill, Sutherland, Asbill & Brennan, Washington, D. C., of counsel), for Southern States, Inc. (f/k/a Southern States Equipment Corp.).

W. Donald McSweeney, Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., R. Walston Chubb, Philip A.. Maxeiner, Robert S. Allen, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for Wagner Electric Corp.

Brainerd Chapman, Chicago, Ill., Gallop, Climenko & Gould, New York City, for Worthington Corp.

ROBSON, District Judge.

Separate motions [1] have been filed to strike allegations in the respective complaints pertaining to references to the Government's prior criminal and civil proceedings.[2]

---

[1.] 62 C 348, Motion of Sangamo Electric Company. 61 C 1277–1285, 1688–1696, 2068–2077, 2179–2187, Motion by A. B. Chance, Allen-Bradley Company, Allis-Chalmers Manufacturing Company, Carrier Corporation, The Clark Controller Company, Cornell Dubilier Electric Corporation, Foster Wheeler Corporation, General Electric Company, Hubbard and Company, I-T-E Circuit Breaker Company, Ingersoll-Rand Company, Joslyn Mfg. & Supply Co., Cutler Hammer, Inc., Federal Pacific Electric Company, Moloney Electric Company, McGraw-Edison Company, Ohio Brass Company, H. K. Porter Company, Inc., Sangamo Electric Company, Kuhlman Electric Company, Lapp Insulator Company, Inc., Southern States, Inc., Square D Company, Wagner Electric Corporation, Westinghouse Electric Corporation, C. H. Wheeler Manufacturing Company, Worthington Corporation.

[2.] The motion is to strike ¶¶ 10, 11, 12, 13 and 15 in Nos. 61 C 1277, 1278, 1279, 1281, 1283, 1285, 1688, 1689, 1690, 1692, 1694, 1696, 2179, 2180, 2181, 2183, 2185, 2187; ¶¶ 11, 12, 13, 14 and 16 in Nos. 61 C 1280, 1691, 2182; ¶¶ 10, 11, 12, 13, 14, 15, 16, 17, 19 in Nos. 61 C 1282, 1693, 2184; ¶¶ 10, 11, 12. 13, 14, 15, 16, 18 in Nos. 61 C 1284, 1695, 2069, 2186; ¶¶ 9, 10, 11, 12, 13 and 15 in Nos. 61 C 2068, 2070, 2071, 2072, 2073, 2074, 2075, 2077; ¶¶ 10, 11, 12, 13, 14 and 16 in No. 61 C 2076, and the allegation "they first became aware of the grand jury proceedings which resulted in indictment of the defendants in" in the respective paragraphs in the various complaints.

The unopposed affidavit of Howard Aibel establishes that all pleas were made before the taking of testimony, although plaintiffs maintain that statements of counsel at the time of the pleas and sentences constitute "testimony."

The motion in 61 C 1277 and related cases, pursuant to Rule 12(f), is for an order striking all allegations concerning or summarizing prior criminal indictments of, and judgments against, the defendants and alleged coconspirators in the United States District Court for the Eastern District of Pennsylvania, because those allegations are highly prejudicial to the defendants and are incompetent and immaterial, and may not be pleaded because "prior criminal judgments do not constitute *prima facie* evidence in these causes under Section 5(a) of the Clayton Act (15 U.S.C.A. § 16(a)) for the reason that the same were consent judgments entered before testimony taken and therefore fall within the proviso to Section 5(a) of the Clayton Act." Further, the allegations contain references to pleas and judgments in prior criminal proceedings relating to alleged coconspirators who are not parties to these causes, and finally, because the allegations improperly contain purported summarizations and conclusions by plaintiffs as to the charges contained in the indictments and the issues involved in the prior criminal proceedings.

The separate motion of Sangamo Electric Company, in No. 62 C 348, is in the alternative to the above motion, and is directed against the last sentence of paragraph 18 of the complaint on the grounds that it refers to grand jury proceedings and the return of indictments in 1960, and no indictment was ever returned against Sangamo involving instrument transformers, and the allegation is immaterial, irrelevant and unfairly prejudicial to Sangamo. It further moves to strike allegations in paragraph 19 pertaining to the prior criminal and civil proceedings as immaterial, scandalous and incompetent in this civil action against Sangamo because it was not a defendant in those actions.

The disposition of these motions depends primarily upon the interpretation to be given to the phrase "*consent* judgments or decrees entered before any testimony has been taken"—whether it was meant to cover judgments on pleas of guilty as well as *nolo contendere* pleas. The section, 15 U.S.C. § 16(a) in its entirety provides:

"A final judgment or decree heretofore or hereafter rendered in any civil or *criminal* proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be *prima facie* evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, That this section shall not apply to *consent judgments* or decrees *entered before any testimony has been taken* or to judgments or decrees entered in actions under section 15a of this title." (Italics supplied.) [3]

*Plaintiffs maintain:*

(1) The proviso of the Act is inapplicable to any judgment in any criminal case, either after plea of *nolo contendere,* and especially after a plea of guilty. They contend the several decisions which support even the striking of references to *nolo contendere* pleas and judgments are wrong in that the proviso makes no reference to consent judgments in *criminal* cases, as does the body of the section.[4]

3. As originally enacted, an additional temporary proviso read: "Provided further, This section shall not apply to consent judgments or decrees rendered in *criminal proceedings* or suits in equity, now pending, in which the taking of testimony has been commenced but has not been concluded, provided such judgments or decrees are rendered before any further testimony is taken."

4. Where there is careful use of specific references to criminal proceeding at two points, the courts "cannot supply what Congress has studiously omitted." F. T. C. v. Simplicity Pattern Co., Inc., 360

(2) The legislative history is too ambiguous and conflicting to support defendants' construction of the proviso.

(3) The judgments were entered *after* testimony was received so that the proviso is by its very terms inapplicable.[5]

(4) The admissibility of pleas of guilt as admissions under the general rules of evidence provides an essential and proper background to the conspiracy allegations of the complaints.[6]

(5) The word "consent" is inappropriate to describe judgments in criminal cases. (United States v. Norris, 281 U. S. 619, 50 S.Ct. 424, 74 L.Ed. 1076 (1930); United States v. Standard Ultramarine & Color Co., 137 F.Supp. 167, 173 (D.C.N.Y., 1955); Ansaldo San Giorgio I, 73 F.2d 40, 41 (2nd Cir., 1934), aff'd 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016 (1935)).

Plaintiffs point out that the only decision which had squarely faced the problem of the inclusion within the proviso of pleas of guilty and judgments based thereon, held that the guilty plea could not be deemed a "consent" judgment. (Sacramento Municipal Utility District v. Westinghouse Electric Corp., Civil No.

8380, N.D.Cal. May 2, 1962, unreported.)[7] It was there stated that:

"Specific note should be made of the reference in paragraph 22 to defendant's plea of guilty to the criminal indictment. Title 15 U.S.C. § 16, by its terms, does not apply to 'consent decrees,' but a plea of guilty cannot be construed as being a consent decree, any more than a crime can be consented to. A conviction of violation of the Sherman Act establishes 'prima facie all matters of fact and law necessarily decided by the conviction and the verdict on which it was based' (Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 569, 71 S.Ct. 408, 95 L.Ed. 534), and no logical distinction appears herein between a plea of guilty and a conviction after trial."

(6) Plaintiffs further maintain that the references in the complaints to the Philadelphia criminal proceedings are proper. They contend that the weight of authority holds that a judgment or decree admissible as *prima facie* evidence, under Section 5(a) may be pleaded in the complaint.[8]

---

U.S. 55, 67, 79 S.Ct. 1005, 1012, 3 L.Ed. 2d 1079 (1959); United States v. Atchison, T. & S. F. Ry., 220 U.S. 37, 31 S.Ct. 362, 55 L.Ed. 361 (1911); Grand River Dam Authority v. F. P. C., 246 F.2d 453 (10th Cir., 1957).

5. Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 8 Cir., 194 F. 2d 846, cert. den. 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348 (1952); DeLuxe Theatre Corp. v. Balaban & Katz Corp., 95 F.Supp. 983 (D.C.Ill., 1951); Don George, Inc. v. Paramount Pictures, Inc., 111 F.Supp. 458 (D.C.La.1951); Webster Rosewood Corp. v. Schine Chain Theatres, Inc., D.C., 157 F.Supp. 251, aff'd 2 Cir., 263 F.2d 533, cert. den. 360 U.S. 912, 79 S.Ct. 1296, 3 L.Ed.2d 1261 (1959); Sablosky v. Paramount Film Distributing Corp., 137 F.Supp. 929 (D.C. Pa., 1955).

6. Susmann v. Tullar, 276 F.2d 899 (2nd Cir., 1960); Levelle v. Powers, 248 F. 2d 774 (10th Cir., 1957); United States v. Standard Oil Co., 60 F.Supp. 807 (D.C. Cal., 1945), rev'd on other grounds, 153

F.2d 958 (9th Cir., 1946), aff'd 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947); Galvan v. Torres, 8 Ill.App.2d 227, 131 N.E.2d 367 (1956); 130 A.L.R. 690, 699 (1941); 18 A.L.R.2d 1287, 1307 (1951).

Plaintiffs also maintain that other admissions by counsel for defendants in the Philadelphia criminal proceedings are admissible herein. (Beyer Co. v. Fleischmann Co., 15 F.2d 465 (6th Cir., 1926); 4 Wigmore, Evidence § 1063(1) (3d ed. 1940); McCormick, Evidence §§ 242, 244 (1954))

7. Atlantic City Electric Company et al. v. General Electric Company, D.C., 207 F.Supp. 620.

8. SouthSide Drive-In Co., Inc. v. Warner Bros. Pictures Dist. Corp., 30 F.R.D. 32 (D.C.Pa., 1962); Independent Theatres, Inc. v. American Broadcasting-Paramount Theatres, Inc., (D.C.N.Y.1959), 179 F. Supp. 489; County Theatre Co. v. Paramount Film Dist. Corp., 146 F.Supp. 933 (D.C.Pa., 1956); Normandie Amusement Corp. v. Loew's Inc., 140 F.Supp.

(7) Motions to strike are not favored and will not be granted absent a showing of prejudice.[9]

Plaintiffs point out that Congress saw fit, in the wording of the *temporary* proviso (no longer in effect) to use the word "criminal," as well as civil, proceedings and its omission from the proviso now in effect is extremely indicative of a positive intent to remove criminal consent judgments from the ambit of the proviso.[10] They further contend that since the main body of the section makes the judgment *prima facie* evidence as to matters to which there might be estoppel,[11] or to judgments or decrees entered under section 15a actions, it is indicative of a category of litigation other than those in which judgments on guilty pleas fall. They base this on the ground that pleas of guilty are admissible under the ordinary rules of evidence as admissions, and Section 15(a) concerns *civil* proceedings.

Plaintiffs trace the various versions of the Act with the differing phraseology, citing the fact that the conferees offered no written explanation for adding the two provisos which neither House had approved, and stating the "unreliability of such [Congressional] debates as

a source from which to discover the meaning of the language employed in an act of Congress." (Lapina v. Williams, 232 U.S. 78, 90, 34 S.Ct. 196, 199, 58 L.Ed. 515 (1914)). Further, much of the colloquy cited as favorable to defendants' construction was that of antagonists of the legislation and therefore entitled to little weight or authority. (Mastro Plastics Corp. v. N. L. R. B., 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956); Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951)). Plaintiffs lucidly describe the Congressional colloquy as "particularly unreliable since precision of expression was not characteristic of these debates. * * * [M]ost of the statements in the debates are, at best, ambiguous."

In support of their contention that irrespective of the controversy revolving around the interpretation of the proviso, it is inapplicable in that testimony was in fact received in the prior government proceedings. They predicate this position on the equivalence of the words "testimony" and "evidence".[12] In fact, some of the Congressmen used the word "evidence" in speaking of the Conference Report. Plaintiffs go on to refute the af-

257 (D.C.N.Y., 1954); Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp., 19 F.R.D. 151 (D.C.N.Y., 1953); Revere Camera Co. v. Eastman Kodak Co., 81 F.Supp. 325 (D.C.Ill., 1948); Tivoli Realty, Inc. v. Paramount Pictures, Inc., 80 F.Supp. 800 (D.C.Del., 1948); Sinaiko Bros. Coal & Oil Co. v. Ethyl Gasoline Corp., 2 F.R.D. 305 (S.D. N.Y., 1942); Sacramento Municipal Utility District v. Westinghouse Electric Corp., Civil No. 8380 (D.C.Cal., May 2, 1962).

9. Securities Exchange Commission v. Timetrust, Inc., 28 F.Supp. 34 (D.C.Cal., 1939); Kraus v. General Motors Corp., 27 F.Supp. 537 (D.C.N.Y., 1939); Montgomery Ward & Co. v. Schumacher, 3 F.R.D. 368 (D.C.Cal., 1944); Boerstler v. American Medical Assn., 16 F.R.D. 437, (D.C.Ill., 1954); 2 Moore, Federal Practice (2d ed.) ¶ 12.21 [2], at pp. 2317-19. Also, in respect to the aspect of prejudice: Sinaiko Bros. Coal & Oil Co. v.

Ethyl Gasoline Corp., 2 F.R.D. 305 (D.C. N.Y., 1942).

10. On the other hand, the use of the word "consent" judgment in respect to criminal proceedings in the temporary proviso is some indication of a Congressional understanding that it *is* possible to have consent judgments in criminal proceedings.

11. Plaintiffs maintain there would be estoppel as to judgments based on guilty pleas.

12. F. T. C. v. Curtis Publishing Co., 260 U.S. 568, 43 S.Ct. 210, 67 L.Ed. 408 (1923); Temple Anthracite Coal Co. v. F. T. C., 51 F.2d 656 (3rd Cir., 1931); Wholesale Grocers' Assn. v. F. T. C., 277 F. 657 (5th Cir., 1922); Arkansas Wholesale Grocers' Assn. v. F. T. C., 18 F.2d 866 (8th Cir., 1927), cert. den. 275 U.S. 533, 48 S.Ct. 30, 72 L.Ed. 411 (1927).

fidavit of Howard J. Aibel, an attorney in the General Electric Company, which states that "pleas were entered and judgment entered thereon by the Court before any testimony had been taken" as hearsay, and misleading, in that it fails to disclose the pleas which were entered long before the "settlement negotiations." The Transcript of Proceedings in the criminal cases indicates, plaintiffs say, that evidence was presented to the Court both to induce the acceptance of *nolo contendere* pleas, and to attempt to prove mitigating circumstances in connection with sentencing. Further, they state that affidavits, verified statements, and various factual memoranda were submitted to the Philadelphia court. Also, during the course of the Philadelphia proceedings, counsel for various defendants made representations in open court as to various factual aspects of the cases, and "solemn admissions of counsel are considered evidence in the trial of a case." [13] They point out, and stress, that the proviso uses the word "any" in describing the amount of evidence taken as making the proviso inapplicable.

*Defendants maintain:*

(1) The statute precludes from the *prima facie* effect of judgments in prior governmental civil or criminal proceedings,[14] judgments based on "consent" which defendants, with a great deal of plausibility, assert include not only judgments on pleas of *nolo contendere* [15] but also judgments based on pleas of guilty, in that the purpose of the statute was to prompt defendants to capitulate and save the Government the cost of prosecuting to completion these protracted cases. Both judgments are based on the only consent needed—that of the defendant. There need not be mutuality of consent; the consent of the Government is not necessary—unilateral consent is enough.[16]

(2) The statute gives only *judgments prima facie evidentiary* effect, and does not extend to *pleading* such judgments, let alone other matters involved in such prior suits.

(3) The pleadings here refer to judgments and allegations covering coconspirators *not defendants* here.

(4) The proviso should be interpreted to cover criminal as well as civil proceedings although criminal proceedings are not specifically referred to therein because the same phrase "judgments or decrees" is used in the main part of the section as well as in the proviso and should be given the same meaning.[17]

(5) The Congressional history of the Act clearly demonstrates Congress intended to cover judgments based on

13. Oscanyan v. Arms Co., 103 U.S. 261, 263, 26 L.Ed. 539 (1880); Dick v. United States, 40 F.2d 609, 611 (8th Cir., 1930).

14. Twenty indictments were returned in Philadelphia, to 13 of which all defendants pled *nolo contendere;* to five indictments some defendants pled guilty and and some *nolo contendere;* and to two indictments all pled guilty.

15. Citing: Pfotzer v. Aqua Systems, Inc., 162 F.2d 779, 784 (2nd Cir., 1947); Twin Ports Oil Co. v. Pure Oil Co., 26 F. Supp. 366 (D.C.Minn., 1939) aff'd 119 F.2d 747, (8th Cir., 1941); cert. den. 314 U.S. 644, 62 S.Ct. 84, 86 L.Ed. 516 (1941); rehearing denied, 314 U.S. 711, 62 S.Ct. 176, 86 L.Ed. 567 (1941); Barnsdall Ref. Corp. v. Birnamwood Oil Co., 32 F.Supp. 308, 311–313 (E.D.Wis., 1940); Alden-Rochelle, Inc. v. American Soc'y of Composers, Authors & Publishers,

3 F.R.D. 157, 159 (D.C.N.Y., 1942); City of Philadelphia v. Westinghouse Elec. Corp., 1961 Trade Cas. ¶ 70,143 (D.C.Pa., 1961); N. W. Elec. Power Co-op. v. General Electric Co., (D.C.Mo.), 30 F. R.D. 557.

16. Twin Ports Oil Co. v. Pure Oil Co., 26 F.Supp. 366 (D.C., 1939); Barnsdall Ref. Corp. v. Birnamwood Oil Co., 32 F.Supp. 308 (D.C., 1940).

17. Lewellyn v. Harbison, 31 F.2d 740 (3rd Cir., 1929); Davies Warehouse Co. v. Bowles, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635 (1944); Commissioner v. Estate of Ridgway, 291 F.2d 257 (3rd Cir., 1961); Twin Ports Oil Co. v. Pure Oil Co., 26 F.Supp. 366 (D.C., 1939); Barnsdall Ref. Corp. v. Birnamwood Oil Co., 32 F.Supp. 308 (D.C., 1940); United States v. Cooper Corp., 312 U.S. 600, 607, 61 S.Ct. 742, 85 L.Ed. 1071 (1941).

guilty pleas in the phrase "consent judgments." [18]

(6) A further ground for striking the challenged allegations is that they plead evidence in a complaint,[19] and are not in compliance with Rule 8(a) requiring conciseness in a complaint, especially in antitrust cases.[20]

(7) The allegations sought to be stricken are extremely prejudicial. (Alden-Rochelle, Inc. v. American Soc'y of Composers, Authors & Publishers, 3 F.R.D. 157, 159 (D.C.N.Y., 1942); De-Luxe Theatre Corp. v. Balaban & Katz Corp., 95 F.Supp. 983, 986 (D.C.Ill., 1951); Aljan Camera Co. v. Eastman Kodak Co., 1957 Trade Cases, ¶68,752.) They maintain, after pointing out that *nolo* pleas are not admissible in subsequent suits, that sometimes admission of pleas of guilty is also circumscribed. (Atlantic City Electric Co. v. General Electric Co., 207 F.Supp. 620 (1962, D.C. N.Y.))

As illustrative of the pleadings sought to be stricken defendants suggest ¶16 of the complaint in 61 C 1280,[21] and ¶15 of the complaint in 61 C 1285.[22] Defendants ask that all indictments, attached to complaints as exhibits or incorporated by reference, be stricken.

This problem has received consideration both from decisions and law reviews.

18. The defendants argue that it is evident Congress did not mean to use the phrase "consent judgments or decrees" solely in the equity sense of the word inasmuch as the temporary proviso had expressly covered both criminal and civil proceedings.

19. Vilaster Kent Theatre Corp. v. Brandt, 1954 Trade Cases, ¶ 67,691 (D.C.N.Y., 1954); Rule 8(a), Federal Rules of Civil Procedure; Garbose v. George A. Giles Co., 12 Fed.Rules Serv. 8a.464, Case 1 (D.C.Mass., 1949); Independent Theatres, Inc. v. American Broadcasting Paramount Theatres, Inc., 179 F.Supp. 489 (D.C.N.Y., 1959); Emich Motors Corp. v. General Motors Corp., (D.C. Ill., 1942) 2 F.R.D. 552; Satink v. Holland Township, 28 F.Supp. 67 (D.C. N.J., 1939).

20. New Dyckman Theatre Corp. v. Radio-Keith-Orpheum Corp., 16 F.R.D. 203, 205 (D.C.N.Y., 1954); Garbose v. George A. Giles Co., 12 Fed.Rules Serv. 8a.464, Case 1, (D.C.Mass., decided 3-7-49).

21. "On May 25, 1960, the United States of America instituted Criminal Action No. 20362 in the United States District Court for the Eastern District of Pennsylvania against the defendants and the coconspirators named in this Count. The indictment therein charged that during a period beginning at least as early as 1956 and continuing until sometime in 1960, the defendants and coconspirators named in this Count engaged in a combination and conspiracy in unreasonable restraint of interstate trade and commerce in distribution transformers in violation of Section 1 of the Sherman Act. The indictment further charged that such combination and conspiracy consisted of a continuing agreement, understanding and concert of action, the substantial terms of which were to fix and maintain prices, terms and conditions of sale of distribution transformers and to quote to customers only prices for distribution transformers as agreed upon and fixed. The United States further charged that the defendants and coconspirators named in this Count, for the purpose of forming and effectuating the combination and conspiracy charged, did, among other things, the acts alleged in paragraph 14. On December 8, 1960, said defendants and coconspirators pleaded *nolo contendere*, and on February 7, 1961, judgment of guilty on those pleas was entered, and sentences were imposed by the Court."

22. Paragraph 15 of the complaint in 61 C 1285 was substantially similar to the above, charging additionally that the conspiracy was "to fix and maintain prices for the sale of power switching equipment, to allocate sales of power switching equipment and to submit noncompetitive, collusive and rigged bids and price quotations in connection with the sale of power switching equipment, to electric utility companies and other purchasers * * *. On December 8, 1960, all of the defendants and coconspirators named in this Complaint pleaded guilty to the indictment, except Joslyn, which pleaded *nolo contendere* on that date, and Schwager-Wood, which pleaded *nolo contendere* on February 6, 1961. Judgment of guilty was entered on all of those pleas and sentences were imposed by the Court on February 6, 1961."

In 71 Yale Law Journal, 684, the writer concluded (p. 686) that

> "Both legislative history and logical statutory construction indicate that *a guilty plea falls within the proviso and is therefore outside the scope of the section.*"

> "* * * The questions and discussion on the floor of Congress following the introduction of the Conference Committee bill in both houses clearly indicate that the purpose of the proviso was to induce defendants to capitulate to government demands. As one member of the Committee explained:

> "'[T]he *prima facie* effect shall not apply to consent judgments * * * before any evidence is introduced. * * * If the Government brings a suit against a trust * * * and it surrenders, we eliminate the effect of the *'prima facie'* judgment. If it fights and loses then the *prima facie* effect is given. * * *'

> "*Though the proviso speaks of 'consent judgments or decrees,' the phrase was manifestly intended to cover criminal as well as civil judgments. Several Senators opposed the proviso precisely because it would include guilty pleas, thereby exempting them from the section's effect.* * * *

> "These debates on the final bill make clear what was true from the beginning: that Congress had conceived section 5 primarily to relieve third party plaintiffs from the unfairness and waste which had resulted from the necessity of relitigating issues already adjudicated by an expensive trial. * * * And, the proviso gave the government a useful tool with which to induce compromise. It was hoped that defendants fearing future damage actions would waive trial on the government charges in order to deprive third party plaintiffs of the benefit of section 5." (Italics supplied.)

The 1939 decision of Judge Gunnar H. Nordbye in Twin Ports Oil Co. v. Pure Oil Co. et al., D.C., 26 F.Supp. 366, deals at great length with the statute and has many quotations from the Congressional hearings. It was there held that motions to strike reference to suits in which pleas of *nolo contendere* had been entered should be granted. He said (p. 378):

> "The Clayton Act does not attempt to change the effect or scope of a judgment entered on a plea of *nolo contendere*. Congress was presumably cognizant of the long line of decisions which hold that a plea of *nolo contendere* does not create an estoppel as between the Government and the defendant. Obviously, therefore, if the judgment in * * * case No. 2 is not an estoppel as between the Government and the defendant, it can have no probative value in the trial of this case in a third party suit. By the very terms of the act, it is limited in its scope to such matters respecting which the judgment would be an estoppel between the Government and the defendant.

> "These defendants have not unqualifiedly admitted the truth of the charge in the indictment. The effect of their pleas was a restricted and limited admission for the purpose of that case only. In light of the authorities, defendants are not estopped to deny in any other proceeding as between them and the Government, the truth of the allegations in the indictment. * * * A judgment entered on a plea of *nolo contendere* does not constitute a finding on any fact question * * *."

However, several statements in the opinion go beyond the applicability of the Act to pleas of *nolo contendere*. Thus the writer states (p. 376):

> "During the early part of the debate, Senator Walsh did question that a judgment based on a plea of guilty would be a consent judgment,

stating that 'no criminal would ever consent that a judgment be entered against him when he pleads guilty.' But in the latter part of the debate, *no one questioned that a judgment based on a plea of guilty or plea of nolo contendere would be within the proviso.*" (Italics supplied.)

He quoted a Senator's statement that "The argument in favor of those provisions is that it will induce the parties to come in and plead guilty" (p. 375), and Senator Norris' statement that "The real effect of that proviso is to make the section inapplicable to cases in which consent judgments have been taken in cases where *pleas of guilty* have been entered by the defendant. Why should a judgment rendered upon a plea of guilty be any different from a judgment rendered upon a trial where the evidence was taken? If there is any difference, it is in favor of the plea of guilty, judgment being accepted as true, because the defendant admits it and has never contested it."

At another point he said (p. 372):

"The *prima facie* feature of judgments and decrees entered in proceedings instituted by the Government was an innovation of the Clayton Act, and in considering the past experience with reference to the advantage of consent decrees and pleas of guilty, it was apparently assumed that the provisos would redound to the public good."

He also stated:

"However anomalous the term 'consent judgment' in a criminal proceeding may be, *it must be conceded that Congress unmistakably intended to include judgments entered on pleas of guilty* and pleas of *nolo contendere* in pending criminal cases as consent judgments if entered forthwith after the adoption of the act. * * *"  (Italics supplied.)

At p. 371 he said:

"If Congress intended to designate judgments entered on pleas of guilty or *nolo contendere*, before any testimony had been taken, as consent judgments, this Court must give effect to such intention, however unusual or inappropriate the expression may be. However, 'consent' does not necessarily refer to or indicate a bilateral agreement; it may be unilateral. In Funk and Wagnalls' New Standard Dictionary, 'consent' is defined as 'a voluntary yielding of the will, judgment or inclination to what is proposed or desired by another.' "

Judge Wilfred Feinberg very recently had the instant problem presented to him in Atlantic City Electric Company, et al. v. General Electric Company, et al., 207 F.Supp. 620 (D.C.N.Y., 1962), and held, in substance, that references to guilty pleas and judgments were proper, but that references to *nolo contendere* pleas and judgments were improper.

Preliminarily, he noted that motions to strike are not favored and that little is accomplished by "attempting to prune complaints at this stage." The contention was made in that case, as here, that judgments on guilty pleas are "consent judgments" within the meaning of Section 5(a). He observed that a temporary proviso which had additionally previously been in Section 5(a) had included the word "criminal" in its consent judgment provision, and it might be concluded from the omission of the word "criminal" from the proviso here under consideration that the omission was advised and therefore judgments on pleas of guilty were not meant to be included. He quotes conflicting statements of Senators Reed and Walsh as to whether the proviso was meant to cover as consent judgments, those based on pleas of guilty. Judge Feinberg dismissed as *dictum* [23] the Twin Ports Oil

23. Justice Ulysses S. Schwartz stated the difference between *dictum* and *obiter dictum* in Larson v. Johnson, 1 Ill.App.2d 36, at 40–41, 116 N.E.2d 187, at 189:

"Whether a legal proposition stated in an opinion is *obiter dictum* is to be determined from a reading of the entire opinion. If the opinion expressed on a

Co. v. Pure Oil Co. case (D.C., 26 F.Supp. 366, aff'd 8 Cir., 119 F.2d 747, cert. den. 314 U.S. 644, 62 S.Ct. 84, 86 L.Ed. 516 (1941)) statements that judgments on pleas of guilty were also within the proviso. He held the argument has "weight" that an interpretation of Section 5(a) proviso to cover judgments on pleas of guilty would "erase the well established distinction between pleas of *nolo* and guilty." He found that the legislative history and judicial authority do not support the contention that Section 5 altogether displaced common law rules in respect to the admissibility of guilty pleas and judgments. He stated:

"Because of this appraisal of probable materiality, it is unnecessary to examine defendants' contentions as to prejudice. Accordingly, defendants' motion to strike from the complaints allegations of the guilty pleas and the judgments thereon is denied."

The Atlantic City Electric Company, et al. decision, supra, also dealt with *nolo* pleas. It was stated:

" * * * [P]laintiffs * * * have not cited a single case in which a court refused to strike from a complaint references to *nolo* pleas or judgments thereon when asked to do so. However, the courts have consistently held that the proviso of Section 5 applies to judgments entered after pleas of *nolo* and for that reason have struck from complaints references to judgments entered after such pleas. [Citing cases] In comparable suits against some of these defendants, references to the same *nolo* pleas and judgments thereon were stricken [citing cases]. * * * It is true that the possibility of prejudice to defendants from these allegations may not be great. However, in view of the overwhelm-

ing authority on the point, defendants' motion is granted in this respect."

With respect to references to the Philadelphia indictments, the Court in Atlantic City Electric Company, et al., supra, stated that they contained the charges to which most defendants had pled guilty and were therefore inextricably linked with the issues of the admissibility of pleas of guilty and judgments thereon, and the motion to strike those allegations would not be allowed.

In City of Philadelphia et al. v. Westinghouse Electric Corp. et al., 1961 Trade Cases, ¶70,143, the Court, Judge William H. Kirkpatrick, struck reference to pleas of *nolo contendere*, but did not disturb the allegations of the complaint pertaining to the pendency of civil suits or of fraudulent concealment. The Court confessed to an inability to grasp the logic of the distinction between the two pleas and why the guilty plea was admissible in evidence in a civil suit and the *nolo* plea not, as evidence of the commission of the acts or offenses which are the subject of the civil suit. Further, the City of Philadelphia case, supra, held permissible allegations reciting the date of the termination of the criminal proceedings (with the *nolo* plea) as being material to the statute of limitations issue. In the Atlantic City Electric case, supra, the Court's conclusion recited that:

" * * * [R]eferences to pleas of *nolo* and judgments entered on pleas of *nolo* [are stricken]; a complaint shall be regarded as containing instead of such stricken references statements of when the criminal action was begun and terminated, if no such averments appear in the complaint * * *."

In the case of Berliana Corp. v. Narragansett Industries, Inc., 1962 Trade Cases, ¶70,297, a New York state court

legal question is one casually reached by the court on an issue unrelated to the essence of the controversy or based on hypothetical facts, then it is *obiter dictum*. If, however, the question involved is one of a number of legal issues

presented by the facts of that particular case, the court's decision on that question is not *dictum* even though it be the last ground of many decided by the court, all in support of its final conclusion."

struck allegations in a counterclaim that parties associated with the plaintiff had pleaded *nolo contendere* to a government action where the plaintiff was not a defendant in that criminal suit. It stated while the plea might be used in impeachment, yet the allegations thereof were not a proper part of the pleading.

There is some legal basis at least for holding a judgment upon a *nolo contendere* plea a "consent judgment" in that Rule 11 of the Federal Rules of Criminal Procedure provides that: "A defendant may plead * * * *with the consent of the court, nolo contendere.* * * *"

In United States v. Standard Ultramarine & Color Co., 137 F.Supp. 167 (D. C.N.Y.,1955), it was said (p. 173):

"It is far from clear, despite judicial authority supporting the view, that the exception in § 5 was intended to apply to criminal prosecutions as well as to equity suits. As has been recognized, a 'consent judgment or decree' in a criminal prosecution is an anomaly.

"The use of the *nolo* plea came into extended use in antitrust suits partly because of the uncertainty that a guilty plea would in fact gain for the defendant the benefit of the exception under § 5 * * *. Its use for 'practical purposes' to avoid the issues inherent in a guilty plea does not necessarily reflect congressional purpose to extend the exemption provision of § 5 to defendants in criminal antitrust suits. * * *"

In Federal Shoe Inc. and Federal Sport Shoe Inc. v. United Shoe Machinery Corporation, 19 F.R.D. 209 (D.C. Mass., 1956), the complaint set forth the findings and injunction in the government case. The Court said (p. 210):

"Under § 5 * * * some or all of this material may be admissible at the trial as *prima facie* evidence of violation of the anti-trust laws by the defendant. Its inclusion in the complaint is, however, improper as

a detailed pleading of evidentiary matter. Most of the cases dealing with this problem have, however, allowed plaintiffs to include in the complaint a simple allegation of the entry of the decree and of plaintiffs' intention to rely on it."

In Alamo Theatre Company, Inc. v. Loew's Incorporated, D.C., 143 F.Supp. 419, a motion to strike was continued because the Court (Judge LaBuy) thought the relevance should await its use, if any during the trial.

Judge F. Ryan Duffy, in Barnsdall Refining Corporation v. Birnamwood Oil Co., 32 F.Supp. 308 (D.C.1940),[24] was dealing with a motion to strike portions of a counterclaim which referred to the indictment, plea and judgment in a prior criminal case. The pleas which had been entered were *nolo* pleas. The opinion stated (p. 310):

"If the judgment referred to would not be admissible in evidence at the trial of this action, then it should not be pleaded. A motion to strike is a proper method of raising this question. * * *

"The indictment itself first deals with a description of the various defendants, none of whom are parties to this action except the Barnsdall * * *. Then about eight pages are given over to a description of the oil industry. None of these matters have anything to do with the case in question. About eight pages of the indictment do refer to allegations of conspiracy, but in a large measure relate to matters done by others who were defendants in the criminal action. * * * *It is very apparent that incorporating a lengthy indictment in a pleading, as was done in this case, in no way satisfies the requirement of Rule 8, and therefore the motion of the plaintiff to strike Paragraph 38 and Exhibit A will be granted.*

"Analyzing Section 5 of the Clayton Act: If the judgment offered in

---

24. Not a treble damage suit.

evidence is a 'final judgment' to the effect that a defendant has violated the anti-trust laws, and it is such as to create an estoppel between the United States and the defendant as to the issues involved, and it is offered in a suit brought by a third person under the anti-trust laws, then it is to be considered *prima facie* evidence providing it is not a consent judgment or decree entered before any testimony has been taken."

The Court pointed out that the judgment itself stated it was a consent decree entered before any evidence was taken (however it was entered after a new trial, and evidence had been adduced on the former trial, with a verdict of guilt, but no judgment thereon).

Next the Court dealt with the omission of the word "criminal" in describing consent judgments in the proviso of the Act, and agreed with Judge Nordbye's decision in the Twin Ports Oil Co., case, supra. He said (p. 312):

"I fully agree with Judge Nordbye's opinion where he states: *'Judgments in criminal proceedings and decrees in equity are not treated separately,* but are referred to together. It follows from a reading of this part of the act that, *when Congress used the term "final judgment or decree", it was referring to both criminal and equity proceedings.* The same language was made applicable to both types and classes of cases. In that the term "judgment or decree" in the first part of the act unmistakably refers to both criminal and equity proceedings, *it is reasonable to presume that, when Congress used the term "judgments or decrees" in the first proviso, it intended to use such words in the same manner* and to the same effect as the words that had theretofore been employed. A construction that

the term "judgments or decrees" as used in the first proviso merely refers to civil proceedings would be unwarranted in view of the use of such terms throughout the entire context of the act. In absence of any limitation on the words in the first proviso, it would seem that *there should be no real difficulty in determining that Congress intended to refer to both criminal and equity proceedings in excepting consent judgments or decrees.'* "

" * * * [T]aken in connection with the balance of the language of the Act, it is clear that *reference was to consent judgments in criminal cases as well as suits in equity.* * * *

" 'The only advantage in a plea of *nolo contendere* gained by the defendant is that it gives him the advantage of not being estopped to deny his guilt in civil action based upon the same facts. Upon a plea of guilty, entered of record, the defendant would be estopped to deny his guilt, if sued in a civil proceeding.' * * * "

"While the plea of *nolo contendere* is equivalent to a plea of guilty in that particular case * * * a judgment of conviction on such a plea cannot be used against the defendant in any other case. * * * The defendant is not estopped in a subsequent civil proceeding to deny the facts upon which the prosecution was based. It cannot be used in a civil action for the same act. * * *

"There is nothing to indicate that Congress intended by the Clayton Act any change in the well-established rule as to the effect of a plea of *nolo contendere.*"

In United States v. Brunswick-Balke-Collender Co., D.C., 203 F.Supp. 657, the Justice Department instituted a policy of conditioning its consent [25] and it was

---

25. The condition was: "The corporate defendants be enjoined from defending—on the grounds that they have not violated the Sherman Act as charged in the government complaint—any damage proceeding initiated by any state or political sub-

held the condition was not justified under the statute. The Judge said: "The right given to antitrust defendants by the proviso to § 5 to avoid the *'prima facie* evidence' sanction by capitulation is an unqualified right." The Court recited the Government's position as "the right to withhold its consent and to insist upon trial, knowing full well that such trial would be costly and protracted, or, in the alternative to require an admission of guilt."

Finally, Judge Richard M. Duncan in N. W. Electric Power Cooperative, Inc. v. General Electric Company, et al., 30

F.R.D. 557 (D.C.Mo., 1961), granted defendants' motions to strike allegations in the complaint reciting the fact that the defendants, General Electric and Westinghouse, had pleaded guilty, and defendants, Federal Pacific and I-T-E, pleaded *nolo contendere* to the indictment, the ruling being on the basis that the averments were "immaterial and prejudicial."

It is arguable that the Congressional colloquy reveals that the term "consent judgment" was meant by Senator Reed to cover a *plea* of guilty, or only a judgment based on a *nolo contendere* plea.[26]

---

division thereof, if such suit were instituted prior to the date of entry of this final judgment."

26. The colloquy runs (51 Cong.Rec. Part 16, p. 15823):

"Mr. Reed: * * * 36 defendants entered pleas of *nolo contendere.* * * * Now, a citizen wronged by this combination, robbed by these criminals, can not under this report of the conferees, if it becomes a law, introduce in evidence the record showing their *plea of guilty* * * *.

"Mr. Walsh: Let me inquire of the Senator if he understands the purport of the bill as it is recommended by the conference committee to reach the case of a *judgment entered on a plea of guilty.*

"Mr. Reed: I do; a judgment by consent, in my opinion, covers a judgment entered upon a *plea of nolo contendere* * * *.

"Mr. Walsh: That is what I wanted to inquire of the Senator. He thinks that the term 'consent judgment' would reach to a judgment entered *on a plea of guilty?*

"Mr. Reed: I think it would. It is a *judgment nolo contendere.* It is really a judgment by consent * * *. It is my opinion, from that language, that the deduction must be drawn that the exception applies to criminal as well as civil consents. *The only way you can consent in a criminal case is by an absolute plea of guilty or the plea of nolo contendere.* * * *

(P. 15824) "Mr. Walsh: I scarcely think the Senator will care to say that judgments hereafter entered upon a plea of guilty would fall under the discrimination of consent judgments or decrees, because I take it that no criminal would ever consent that a judgment be entered against him when he pleads guilty. The

judgment goes as a matter of course against him. * * *"

(P. 15824) "Mr. Walsh: * * * I am not able to agree with the Senator that in the future the judgment entered upon a *plea of guilty* in a criminal action would not be available under the proposed statute."

(P. 15825) "Mr. Overman: * * * *We have not deprived a citizen of a solitary shade or shadow of a single right he has now in the courts.*"

(P. 15825) "Mr. Reed: * * * When a criminal stands in a court of justice and pleads guilty, that plea of guilty can be introduced in evidence against him in any case where his guilt is in question—not the judgment, perhaps, but *the fact that he pleaded guilty can be shown.* Let me illustrate: * * * A man defrauds another of $10,000; he is indicted for it; he pleads guilty in court * * *. The injured party thereupon sues him to recover a civil judgment for $10,000. Under the law now he can introduce the indictment and the fact that the man stood in court and pleaded guilty to the indictment.

"Mr. Overman: Does the Senator from Missouri contend that there is anything in this bill which applies to suits between individuals of the kind of which he is speaking?

"Mr. Reed: Why certainly. This applies to that class of evidence, of course; it is limited to trust cases; there can not be any doubt about that; and you have tried to cut out the pleas of guilty in trust cases. *You have got no more right to destroy the evidentiary value of a plea of guilty in a trust case than in the case of an embezzler or a murderer. The evidence in either case can be used without any statute* * * *. There is a reason why a consent judg-

At still other points in the Congressional Record the Senators use the phrase "plead guilty" in discussion of the Act.[27]

ment or plea of guilty should be received that does not apply to an ordinary judgment. * * * When a man goes into court and consents to a decree, it is his solemn admission of record, it imports verity; there can be no mistake. * * * By this bill the conferees say that plea should not be introduced in evidence against him. Absurdity could go * * * to no further extreme * * *. Even when the parties have said, 'Here we are; we are guilty; we admit it; * * *' We by this bill propose to say to the injured and innocent party who has a suit against the culprit, 'You can not prove that fact in your suit where you are seeking to get back the money of which you were robbed by the scoundrel who has just admitted his guilt.' "

(P. 15827) "Mr. Reed: * * * What injury or wrong is done by using in future litigation the confession of guilt that a guilty man has made?" (Italics supplied.)

27. (P. 15938) "Mr. Nelson: * * * These provisions deal tenderly with the great trusts and monopolies, who, knowing that they are guilty, can come into court, *plead guilty*, and say 'We have violated the law; we admit our guilt; we will agree to a consent decree; but these decrees must not be used in other suits against us where a private individual has been injured by the trust.' * * * See what a great hardship that involves? It is always difficult in the prosecution of cases against such trusts * * * to get the necessary and proper evidence * * *. When the poor litigant goes into court under section 7 of the antitrust law to seek his remedy for triple damages, why should he be compelled to scour the country to get that evidence? * * * If the defendant has *plead guilty* in a suit brought by the Government of the United States and has admitted that it has violated the law, why, in Heaven's name, should not that poor individual litigant get the benefit of that admission? Why should he be put to the great expense and trouble of hunting up evidence to prove that the trust has violated the antitrust law when the trust has plead guilty? * * * I am quoting from section 5 * * *. (P. 15939) This, of course, it is argued will be an inducement for them to come into court and plead guilty * * *.

"Mr. Norris: Does it mean that in the cases that are now pending the trusts may come in and *plead guilty* before they take all their testimony * * *.

"Mr. Nelson: Yes, certainly; and that you can not use the judgment itself in a suit brought by anyone else.

"Mr. Norris: Exactly; but after the passage of this bill * * * if some additional evidence is taken this exemption would not apply. * * *

"Mr. Nelson: If they do not *plead guilty* without taking further evidence, they do not get the benefit * * *. The argument in favor of those provisions is that it will induce the parties to come in and *plead guilty;* and, as was well said by the Senator from Missouri [Mr. Reed] in his magnificent argument, why should not the private litigant have the benefit of this *plea of guilty?* A consent decree is nothing more nor less than an *admission of guilt.* And why should not the poor private litigant, who comes in under section 7 and seeks to recover damages for the special injury that has been done to him, have the benefit of this admission?

"Mr. Norris: * * * Does not the Senator think, notwithstanding the proviso to which he has referred, if this bill shall pass that the judgment in a suit hereafter commenced could be offered and would be proper evidence, although it might not establish a *prima facie* case?

"Mr. Nelson: I do not think so, unless the parties should be the same.

"Mr. Norris: That might be true; but what I mean is this: While I agree with the Senator that the proviso ought not to be in the bill at all, still, the proviso being in, it would not necessarily follow that on account of the proviso a judgment could not be offered as evidence if it were otherwise admissible.

"Mr. Nelson: The effect of a judgment would not be restricted under the general law; but the Senator * * * who himself has been a judge, knows very well that where there is not an identity of parties the judgment could not be used.

"Mr. Norris: I understand that; but I do not think the Senator gets my idea * * *. Notwithstanding the proviso, * * * suppose that in all other respects it was proper to offer a judgment in evidence and there was no reason why it should not be admitted, assuming that in other respects the judgment is proper evidence, then this proviso would not exclude it, as I understand.

"Mr. Nelson: No.

"Mr. Overman: It does not interfere with any right he has at present.

"Mr. Nelson: It does not interfere with any right, but we were supposed to be

The Court has studied the extensive references to the Congressional Record pertaining to the Act, especially the proviso in question, and perplexing problems are presented in determining the true intent of Congress as to the inclusion or exclusion of judgments on pleas of guilty within the term "consent judgment." The ordinary connotation of the phrase "consent judgment" would not include them, but in the framework of the section, the temporary proviso, and the Congressional colloquy, it is apparent to the Court that Congress meant to include judgments on pleas of guilty as "consent judgments." As indicated by the quotations above, the phrases, plea of guilty or guilty plea, are used many times, although sometimes closely followed or tied up with the phrase *"nolo contendere."* The latter might lead to the conclusion that the thought of the speaker was concerned with a judgment of guilty on a *nolo* plea.

That there is room for a difference of opinion as to Congressional intent [28] is demonstrated by Judge Nordbye's opinion in the Twin Ports Oil Company case, supra, and Judge Feinberg's decision in the Atlantic City Electric Company, et al. case, supra.

The most that can be said of plaintiffs' contention that the proviso is in any event inapplicable because some "testimony" or evidence was presented in connection with the pleas and sentencing, is that it is only superficially plausible. The Court believes it is clear that the intent of the drafters of the Act applied to testimony *after* the trial on the merits was initiated. In the light of the facts and circumstances here presented the proviso cannot be deemed inapplicable on the ground "testimony" was taken.

■■ After a careful analysis of the factors involved, the Court is of the opinion that in the enactment of the proviso, section 5(a) (15 U.S.C. § 16 (a)), Congress meant to except from the *prima facie* effect provision of the statute, judgments based upon pleas of guilty, as well as upon pleas of *nolo contendere* in criminal proceedings. The prime purpose of the statute was, as indicated, to induce capitulation of defendants to government civil and criminal charges so as to save it the burden of protracted litigation to prove the charges, and that purpose is served equally by pleas of guilty and pleas of *nolo contendere.*[29] Congress used the phrase "consent judgments" in the temporary proviso in connection with criminal as well as civil proceedings, thus indicating the phrase should have that breadth. Why it omitted it from the present proviso is not certain. This omission, however, does not indicate to the Court with definiteness that it meant thereby to narrow its previous concept of "consent judgments." While it is unusual to call a guilty plea a "consent" to a judgment, viewed in context, it can not be said to be inappropriate.

The Court therefore concludes that the motions to strike the allegations of

---

giving the poor fellow some value received by this law. We proposed to give him a remedy by this section."
51 Congressional Record (p. 16276).
"Mr. Bathrick: That means, in one analysis at least, that if a trust, having pursued unfair methods of competition, having crushed out its small competitors, and at last having gotten into the meshes of the law, desires to walk up, with the loot in its pockets, and say *it pleads guilty,* it avoids all use of the testimony taken in the Government action against it on the part of a private plaintiff who desires to recover damages.
"Mr. Webb: No, a consent judgment has the same effect that it would have

had if the trust had fought out the case, but such *judgment does not have a 'prima facie' effect* when used in evidence."

28. In many instances ambiguous phrases are used, such as the word "surrender," which defendants imply means a guilty plea, but to which a connotation restricted to *nolo* pleas might also be given.

29. That construction—by *dictum*—was placed on the statute as long ago as 1939, in the Twin Ports Oil Company case, supra, yet no amendatory legislation has occurred directed to disabuse the public of that interpretation.

the prior Governmental proceedings have merit and should be granted with the exception of the dates of the Governmental proceedings which might have a relevance on the issue of the statute of limitations. References to *nolo* pleas, guilty pleas, judgments, sentences, and summaries of, and quotations from, the indictments, should be stricken. The Court is not at this time ruling upon questions of evidence. Defendants shall prepare and submit a draft order to effectuate this ruling, and submit the same to the plaintiffs within ten days hereof. Plaintiffs may file objections to such draft order within five days thereafter.

In view of the contrariety of decisions interpreting Congressional intent in enacting the proviso and the great importance to the orderly conduct of this multiple litigation for a definitive ruling, this Court respectfully recommends an immediate appeal for determination of the issue.